OLE TWEDT, Respondent, v. ELIAS HANSON, et al. LOUISE BROOKMAN, Appellant.

(226 N. W. 615.)

Opinion filed August 19, 1929.

C. H. *Starke,* for appellant.

C. P. *Brownlee,* for respondent.

Burr, J.  This is an action in statutory form, to quiet title to the S. W. $\frac{1}{4}$ of Sec. 28, Twp. 136, R. 99 in Slope county.  The plaintiff bases his claim upon a deed given to him by the county of Slope on June 20, 1927, and he claims the county of Slope became the owner of the property involved through a tax deed based on the sale of the land for the 1919 taxes.  The only answering defendant is Louise Brockman, the appellant, who denies the validity of the tax deed, and claims the land involved by reason of a certificate of mortgage sale issued to her by the sheriff of Slope county on December 6, 1924.  The appellant tendered into the court the "sum of $1,076.33 as security for the payment of taxes and costs as provided by chapter 266, Session Laws of 1927."  The trial court made findings of fact and ordered judgment in favor of the plaintiff and the defendant Louise Brockman appeals, demanding a trial de novo.

The case was tried upon a stipulated statement of facts from which it appears that in 1919 the county of Slope had an assessed valuation of $3,166,391 and for county revenue purposes, including the care

of the insane, the county levied a tax of $31,373.65, the tax on this land being $84.35. The county, under the limitations prescribed by chapter 61 of the Session Laws of Special Session of 1919, could not levy in excess of $27,864.25; but did levy for the care of the insane the further sum of $3,691.01. Appellant says this should be included in the levy for county revenue and therefore the amount levied was in excess of amount permitted. The respondent says the levy for care of the insane is not included in county revenue in the contemplation of the statute cited. At the tax sale on December 14, 1920, this land was advertised for sale for $84.35 taxes, $32 hail indemnity and $167.50 for seed lien, but the county auditor, in his tax deed to the county recites the land "was returned delinquent for the nonpayment of taxes for the year 1919, amounting to one hundred seventeen and 35/100 dollars, including interest and penalty thereon and the costs charged against said land including personal property taxes specified in the list and in the advertisement, constituting the lien thereon, for the year 1919 to be sold, the same was bid in for the said Slope county." Notice of the expiration of time for redemption was issued on January 11, 1927, stating the amount necessary to redeem to be $937.40. There is on record, the return of the sheriff showing personal service of this notice on William Hanson, occupant of the land, and proof of the mailing a copy of the notice to the appellant at Minneapolis, Minn. On June 20, 1927, a tax deed was issued to the county and on the same day the county deeded the land to the plaintiff.

The record shows that Elias E. Hanson was owner of the land in 1917 and in October of that year he gave a mortgage on the land to the Bank of Midway, of Midway, North Dakota, to secure the payment of $2,500. In November of that year the Bank of Midway assigned the said mortgage to "Louise Brockman of Minneapolis, Minnesota, postoffice, party of the second part" and this assignment was recorded Aug. 21, 1924.

In October, 1924, appellant executed a power of attorney to one E. C. Wilson authorizing and directing him to foreclose the mortgage assigned to her. In this power of attorney she described herself "as Louise Brockman of the city of Davenport, of the county of Scott and the State of Iowa." This power of attorney was recorded Oct. 28,

1924.  The mortgage was foreclosed and a certificate of sale issued to Louise Brockman by the sheriff of Slope county.  There is no evidence that any sheriff's deed was ever issued to her.

Appellants' contention is that the tax deed to the county is void, because:

"A. The tax upon which the deed is based is illegal because in excess of the amount allowed by law.

"B. The description of this tract in the delinquent tax list for 1919 is insufficient as a matter of law.

"C. The notice of expiration of the period of redemption was not served as is required by law."

So far as the claim that the tax levied was illegal because in excess of the amount allowed by law in that levy for care of the insane should be included in county revenue levy is concerned the appellant is not in a position to raise this point.  It may be the levy for care of the insane should have been included in the total amount permitted to be levied for county revenue purpose, but it is too late to raise this issue now.  Under the provisions of § 2193 of the Code the appellant may not have the sale set aside or held invalid unless it is shown "that the property upon which the tax was levied was not subject to taxation, or that the taxes were paid prior to such sale, or that notice of such sale as required by law was not given; or that the piece or parcel of land was not offered at said sale to the bidder who would pay the amount for which the piece or parcel was to be sold, etc."

The notice of tax sale covers over nine columns of the newspaper in solid set matter.  The lands to be sold in the different townships are listed under the description of their townships respectively, of which descriptions Twp. 136–99 is a sample.  Following such description appears the description of land by quarters and sections.  Thus the land involved in this action is listed in the section of a column which is headed Twp. 136–99, and described as Elias Hanson S. W. ¼ less R. W. sec. 28 and following this, on the same line in three columns headed Amt.     Special Hail Indemnity,     Seed Grain, appear the following figures 84.35     33.00     167.50.

The statute prescribing the form of notice required saying:

"Whenever practical the description as to township, range, addition, sub-division and block shall be set as a subheading preceding the de-

scription of tracts and lots in such township, range, addition, sub-division or block, so as to preclude the necessity of the township, range, addition, sub-division or block being printed separately as a part of each description. Tracts and lots shall be, as far as practical, de-scribed in such notice of sale, as to township, range, section, parts of section, sub-division, addition, block and lot by the use of the abbrevia-tions, initial letters, figures, etc. declared to be legal in the matter of the sale of land for taxes by section 2215 of the Compiled Laws of North Dakota for 1913, as amended by chapter 1 of the Session Laws of North Dakota for 1915." See § 2189 of Supplement.

Appellant says: "Nowhere in the column is there anything to indicate the township or range unless we are to conclude that the heading Twp. 136–98 (99?) is to apply to all descriptions below. There is nothing to help us in this conclusion. No ditto marks are used anywhere nor any other sign or word to indicate in what town-ship the lands are."

The law does not contemplate that the number of the township and range shall follow the description of each special tract nor does it require the use of ditto marks. The law evidently contemplates that one description of the township and range is sufficient and that the sub-divisions listed under this description shall be considered as be-ing in that special township and range. Sec. 2215 of the Supp. states what such characters as twp. sec. n. e. w. s. shall be taken to mean. It is said there is nothing to indicate what the range is. The pur-pose of this section is to give notice of the sale of the land and to describe the land with sufficient accuracy so as to apprise an owner that his land is being sold. No one could mistake what Twp. 136–99 means. For example, everyone knows what S. W. ¼ 28, 136–99 means and readily recognizes it as the southwest quarter of section 28, in township 136 north, range 99 west of the Fifth Principal Meridian. Just as we recognize 8/16/29 at the head of a letter in the usual place for a date as meaning the sixteenth day of August, A. D. 1929, so we recognize Twp. 136–99 as township 136 and range 99. We can-not say that the description is insufficient as a matter of law. The cases cited by the appellant as authority for requiring a more detailed description are cases which come under earlier statutes. The tendency

has been to harmonize the descriptions with the forms and characters which the ordinary man recognizes as descriptive of land. This is what was done in this case.

The remaining objection raised by appellant is that the notice of expiration of the time of redemption was not served as required by law. It is admitted that a copy of the notice of the expiration of the period of redemption as issued by the county auditor and addressed to Elias Hanson was sent by registered mail to Louise Brockman at Minneapolis, Minnesota, and that a copy of the notice was served personally upon one William Hanson who was the occupant of the land. Under the provisions of § 2202 of the Revised Codes, as amended by chapter 199 of the Session Laws of 1925 and set forth in the Supplement, where property is bid in by the county notice of the expiration of the period of redemption must be "sent by registered mail to each mortgagee, lien holder, or other person interested therein as may appear from the records of the office of the register of deeds." It is the claim of the appellant that the notice should have been mailed to her at Davenport, Iowa, instead of Minneapolis, Minnesota, as the power of attorney which she had given to E. C. Wilson and which was on record was of a later date than the assignment of the mortgage. It is also claimed that there is nothing in the stipulation of facts or in the record presented to this court which shows that such notice was ever served upon Elias Hanson, the record owner, either personally or by registered mail. The power of attorney to foreclose the mortgage given by Hanson describes him as residing at Schollsmade in Slope county. It is the contention of appellant that this court will take judicial notice of the fact that some years ago the postoffice of Schollsmade was discontinued, and that New England is the postoffice nearest to the land. The record of this case shows the summons and complaint was served upon Elias Hanson in the county of Stark. However the tax deed issued to the county recites:

"That the said Slope county is the legal owner of the said certificate of purchase and the time fixed by law for redeeming the land herein described having now expired and proof of legal notice of expiration of the period of redemption having been filed in the office of the county auditor prior to the maturity of such certificate as provided by law,

and said land not having been redeemed from such purchase. . . . *Now, Therefore,* this indenture, etc."

Section 2206 of the statute (Comp. Laws 1913) says that the tax deed "shall be conclusive evidence of the truth of all facts therein recited and prima facie evidence of the regularity of all the proceedings from the assessment and valuation of the land by the assessor up to the execution of the deed.".

This deed being prima facie evidence of the regularity of the proceedings we therefore presume that the notice of expiration of redemption was properly served as required by law, and the burden of proof is upon the appellant to show a contrary state of facts. See Baird v. Zahl, ante, 388, 226 N. W. 549, decided at this term. In Fisher v. Betts, 12 N. D. 197, 96 N. W. 132, it was held that the "proceedings," the regularity of which is assumed from the recitals in the tax deed, embraced "evidence that notice of the expiration of the time for redemption was published." Such tax deed does not need to be supported by evidence regarding the matters of which it is prima facie evidence. No proof is offered showing that no notice was sent to Elias Hanson or that no notice was served upon him. This case is presented upon a stipulation of facts and the stipulation does not include the record in the sheriff's office, nor all the records of the auditor's office. Certain documents are stipulated as part of the record, such as: the tax deed to the plaintiff; the abstract of tax list for 1918; the abstract of tax list for 1919; the notice of tax sale; the notice of expiration of period of redemption; the return of service upon occupant of the land; the tax deed to the county; proof of service of notice of sale held by the county; the tax receipt; certified copy of the seed lien; certified copy of the power of attorney; and a certified copy of the assignment of the mortgage to the appellant. These exhibits, together with the stipulation admitting them in evidence, are the entire record. There is nothing to show in what county Elias Hanson resided, the mortgage is not in evidence, and the only document referring to his address is the power of attorney—an instrument of appellant's creation and of no probative value. If, as appellant contends, the service of the summons and complaint in this action upon Elias Hanson the record owner in the county of Stark, shows him to be a resident of the county of Stark, then under the provisions of § 2202 of

the Supplement the notice of the expiration of the period of redemption should have been served upon him by registered mail as he would be a resident of another county. There is nothing to show this was not done. The fact that the return of the sheriff showing service upon the owner of the land, though containing a blank for personal service upon the record owner, shows only a personal service upon occupant, does not raise the presumption that no service was made upon the owner because no reference is made thereto. It is possible that it might show no personal service was made upon him, but certainly it does not contradict the prima facie evidence furnished by recitals in the tax deed that legal service was indeed made upon him. The deed speaks for itself and if there is no evidence in the record one way or the other outside of the deed, with reference to the notice of the expiration of the time of redemption and the service thereof then under the recitals in the deed it is assumed there was proper notice issued and the notice was properly served. See Fisher v. Betts, supra. Where the deed is regular on its face, the claimant need not show proper notice is given. This burden is on the one who attacks the deed to show what notice was given and its extent, and to show any want of service or defective service. See Bandow v. Wolven, 23 S. D. 124, 120 N. W. 881.

Service by registered mail was made upon Louise Brockman the appellant by mailing the same to her at Minneapolis by registered mail. It is her contention it should have been mailed to her at Davenport, Iowa. The statutory provisions for service upon the mortgagee required the same to be sent to her at such place "as may appear from the records of the office of the register of deeds" but the same section—§ 2202 of the Supp. requires "the register of deeds upon request of the county auditor to furnish him with a certified list giving the names, and so far as they appear on the records in the office of the register of deeds, the addresses of all persons who appear to be interested as owners, mortgagees, lien holders or otherwise in such real estate which has been sold to the county for taxes as may be specified by the county auditor in making such request."

There is nothing in the record to show that the county auditor made a request or whether the register of deeds furnished any list. We assume this was done because of the requirements of the statute, and

the recital in the deed. See Subd. 15, § 7936 of Comp. Laws. The register of deeds, in ascertaining the parties to the mortgage, would not be required to look beyond the address given in the mortgage. Thus, appellant being the assignee of the mortgagee and her assignment being on record, he would not be required to explore the record beyond ascertaining the address as given in the assignment of the mortgage. He would have a right 'to assume this was the correct address and there is no claim that any notice was given to the register of deeds or to the county auditor of any change of address. This address describes appellant as of "Minneapolis, Minnesota, postoffice." It is true there was on record a power of attorney wherein she described herself as being of Davenport, Iowa. But there is nothing to show that she called the attention of the auditor or the register of deeds to any change in address. The law does not require the register of deeds to keep track of any "change of address."

A more serious question arises from the record as stipulated by the parties. It is conceded by both sides that when the tax sale was had the land was advertised for sale not only for the taxes but also for the hail indemnity and a certain seed lien, in favor of the county, each stated separately, and it is claimed a sale for these in one sum and one certificate is fatal to the sale.

The certificate of sale is not in evidence, but the tax deed does not allege that the land was sold for this seed lien, nor is there anything in the record to suggest such a condition.

No evidence was offered as to the manner of conducting the sale and therefore we do not know whether the land was offered for sale for the hail indemnity, this so-called seed lien, or sold to the county for the taxes alone. So far as the record is concerned it may well be that the land was bought in by the county for the taxes and the hail indemnity. Indeed this would appear to be the facts in the case. The tax deed says that the county of Slope presented this certificate of purchase and that this certificate showed "the property was returned delinquent for the nonpayment of taxes for the year 1919 amounting to One Hundred seventeen and 35/100 Dollars." It is clear therefore the land was not sold for this seed lien even though it was advertised for sale for this item, with others. Just how the amount necessary to redeem amounted to $937.49 in January of 1927, when the land was

sold for $117.35 only does not appear except that the deed to the purchaser recites "the real property hereinafter described did revert to and become the property of said county on account of the nonpayment of taxes assessed and levied against the same for the years 1919 to 1925 inclusive, and the said taxes, interest and penalties aggregating in the sum of Nine hundred thirty-seven & 49/100 Dollars." But there is nothing in the statute making the recitals in this deed prima facie evidence of the facts stated. However § 2191 of the Supplement requires such land bid in by the county to be "assessed and taxed like other real estate until the period of redemption expires." We have no way of ascertaining what is the amount of the subsequent taxes. However if the tax for 1919 was an average tax the taxes for the seven years with interest would be about the amount stated.

There is no dispute but what the taxes due amounted to $84.35, so the amount mentioned in the deed could not possibly include the seed lien. It is possible the sum of $117.35 included the hail indemnity, but the law does not require the land to be sold separately for the hail indemnity when the land is bought in by the county. Section 2191 of the Supplement requires "that each tract . . . shall be offered separately and struck off to the bidder who will pay the total amount of taxes . . . hail indemnity taxes, and penalties and costs charged against it."

The same statute requires the county auditor to reoffer it if there be no private bidders and requires the county treasurer in that case to bid in the land for the county. The land was bid in for the county and therefore we assume, in the absence of any record to the contrary, that the requirements of the statute were followed. The tax deed recites that the land has been offered to the highest bidder and "no one bid upon such offer an amount equal to that for which such piece or parcel of land was subject to be sold, the same was bid in for the said Slope county."

Appellant having failed to sustain the burden of proof to offset the prima facie evidence furnished by the tax deed itself the judgment of the lower court is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.