[File No. 5905.]

BLANCHE WILKE, Respondent, v. MERCHANTS STATE BANK OF RICHARDTON, a Corporation, Richardton Corporation, a Corporation, Muggli Corporation, a Corporation, Fred V. Stein, John Muggli, Gerard Muggli, M. L. McBride, August Heckel, Christina Heckel, and Dunn County, North Dakota,

and

MERCHANTS STATE BANK OF RICHARDTON, a Corporation, Richardton Corporation, a Corporation, Muggli Corporation, a Corporation, Fred V. Stein, John Muggli, and Gerard Muggli, Appellants.

(237 N. W. 810.)

Opinion filed August 17, 1931.

*M. L. McBride* and *Crawford, Cain & Burnett,* for appellants.
*F. E. McCurdy,* for respondent.

BURTZ, Dist. J. This is the second time this case is before this court. On the former appeal it was remanded for a new trial because of the unsatisfactory condition of the evidence and the lack of proper parties to make a complete disposition of the action. See Wilke v. Merchants State Bank, 55 N. D. 603, 215 N. W. 77, where a statement of the facts is set forth.

The complaint was amended, additional parties were brought in, and a retrial of the entire case was had. A very excellent memorandum was filed by the learned trial judge and we quote therefrom, and adopt as expressing our views, this language:

". . . The record shows that John, Gerard, Isadore and Zeno Muggli are brothers. John was cashier of the Merchants State Bank and Gerard and Isadore were assistant cashiers. The Muggli Corporation was organized with the design that it should handle transactions outside the scope of the authority of the bank. The stockholders of this corporation were practically the same as in the Bank. John Muggli was secretary of the Muggli Corporation. The Richardton Corporation was designed to take care of such transactions as neither the Muggli Corporation or the bank desired to be connected with. Of this corporation Zeno Muggli was president and Gerard Muggli was secretary and vice-president. These two men transacted practically all of the business for the Richardton Corporation and held the meetings for the corporation. William Wilke is the husband of the plain-

tiff and transacted the business regarding the lands owned by the plaintiff in the vicinity of Richardton, including the lands in dispute herein, and the transactions between the Wilkes and the defendants.

"The defendant Heckel purchased under executory contract the land affected by the tax titles hereinafter referred to. It was his obligation to pay the taxes upon the land. This he failed to do and the taxes of 1918 went to sale December 9, 1919, were bought in by Joseph Fisher, who assigned the certificate to Fred V. Stein, one of the defendants, February 10, 1923. Fred V. Stein was a resident of Cold Springs, Minnesota, a brother-in-law of John Muggli and stockholder in the bank. He did not pay for the assignments and it is possible he did not know of the assignments until a deed was sent to him to be executed by him transferring the land back to John Muggli. The assignment was paid by check issued by Muggli Company and John repaid Muggli Company. The tax deeds were issued August 14, 1923, to Fred V. Stein, April 21, 1924, Stein conveyed to John Muggli, who in turn conveyed the land to Richardton Corporation.

"The questions presented for determination involve: (1) The validity of the tax deeds, and (2) an accounting between the plaintiff and the defendants for grain, rents and profits received or taken by the defendants from the lands belonging to the plaintiff in the vicinity of Richardton.

"*The Tax Deeds.* The plaintiff contends the tax deeds are void because . . . notice of expiration of redemption was not served on the plaintiff. There is no controversy that plaintiff was a nonresident of the state, hence the service to be effective must include three distinct acts on the part of the sheriff who must make return thereto. Comp. Laws 1913, § 2223. First, service upon the occupant, if any, of the land; second, mailing to the owner a copy of the notice by registered mail at his *'last known postoffice address;'* and lastly, the publication of the notice once each week for three consecutive weeks. Hodgson v. State Finance Co. 19 N. D. 139, 122 N. W. 336. The return of the sheriff showing 'proof of notice' must be filed with the county auditor before the tax deed may issue.

"The sheriff returned that the notice came into his hands on the 19th day of March, 1923; that he found August Heckel in possession of the real estate and on April 3, 1923, he served the notice 'personally'

on August Heckel by delivering to and leaving with Christine Heckel, a member of his family, etc. He then goes on to say: 'That I made diligent search and inquiry for Blanche Wilke, the person named in said notice and the person upon whom the said notice was intended to be served but after such search and inquiry I have been unable to find said Blanche Wilke in said Dunn county, North Dakota, upon whom to make service thereof. That I served the said notice upon Blanche Wilke, upon whom the said notice was intended to be served, the said Blanche Wilke being a nonresident of the State of North Dakota, on the 4th day of April, A. D. 1923, by then and there depositing in the postoffice in the city of Manning, North Dakota, a true and correct copy of said notice; that the said copy so deposited in said postoffice was enclosed in an envelope addressed to said Blanche Wilke at her *last known place of residence;* namely, Lewiston, Montana, and that postage thereon was paid in full and the same duly registered." This return is dated April 4, 1923. It will be noticed that the copies substituted for the original exhibit with reference to the notice and the returns thereto do not show in full the return made by the sheriff. This return does not mention the publication of the notice. However, there was a publication of the notice, but the record is silent as to who procured the publication. The certificate or affidavit of publication appears to have been sworn to April 6, 1923, so that it is fair to conclude it was not filed with the above return. Nor is there any evidence in the record, oral or documentary, when the proof of publication reached the auditor's office, whether before or after the tax deeds were issued. Although the tax deed is prima facie evidence of the regularity of the proceedings leading to its issuance and in the absence of proof to the contrary it will be presumed that the notice was properly given, this standing given to the deed by the statute, § 2206, Comp. Laws 1913, and the attendant presumption as to regularity of service and return, must give way when the evidence discloses facts inconsistent with that presumption. Twedt v. Hanson, 58 N. D. 571, 226 N. W. 615. The proof of service of the notice must show with reasonable certainty that the requirements of the statute have been complied with. Biberdorf v. Juhnke, 59 N. D. 1, 228 N. W. 233. 'The sheriff's return is conclusive upon the parties and their privies.' Biberdorf v. Juhnke. The requirements of the statute as

to notice must be fully and literally followed to give one the right of redemption. The provisions of the statute are mandatory, are construed strictly in favor of the owner and generally no presumptions with regard to proper service and return thereof will be indulged in. Black, Tax Titles, 2d ed. § 343; 26 R. C. L. 431, § 388; Biberdorf v. Juhnke, 59 N. D. 1, 228 N. W. 233, supra; Baird v. Zahl, 58 N. D. 388, 226 N. W. 549; Golden Valley County v. Miller, 57 N. D. 101, 220 N. W. 839.

"It is suggested that service on Heckel was service on the owner, inasmuch as Heckel had the beneficial interest in the land, and that plaintiff held the title in trust, and the return shows that Heckel was in possession. Even if this be true, no service contemplated by statute was made on him, for the service contemplated by the statute is personal service. The statute, § 2223, Comp. Laws 1913, provides that in addition to publication and mailing, notice shall be served on the person in possession of the real estate. It nowhere speaks of substituted service nor that service may be made as provided for the service of summons as is the case in Minnesota and other jurrisdictions. Gordon v. Palmer, 160 Minn. 136, 199 N. W. 895. Personal service is therefore necessary. The rule stated in 46 C. J. page 557, § 65, is as follows: 'Where a statute requires the giving of notice and there is nothing in the context of the law or in the circumstances of the case to show that any other notice was intended, personal notice must always be given.' To the same effect see 20 R. C. L. 343, Casey v. Hogue, 204 Iowa, 3, 214 N. W. 729.

"The advantage in this case of personal service on Heckel is apparent. Heckel knew the postoffice address of the plaintiff, for he had written plaintiff about two years prior thereto and plaintiff's husband had been to see Heckel a number of times during 1919, 20 and 23. The sheriff in the exercise of reasonable diligence would then have learned of the postoffice address of the plaintiff. Again, the return does not show mailing of the notice to plaintiff at her 'last known *postoffice address*' as provided by statute. The notice was mailed to plaintiff at her 'last known *place of residence*.' These terms are not construed to be synonymous. Atwood v. Tucker (Atwood v. Roan) 26 N. D. 622, 51 L.R.A.(N.S.) 597, 145 N. W. 587; Hughes v. Fargo Loan Agency, 46 N. D. 26, 178 N. W. 993; Miller v. Benecke,

55 N. D. 231, 212 N. W. 925, and other numerous decisions of our supreme court.

"It is contended, however, that plaintiff had actual notice of the proceedings because it is asserted that Heckel sent the papers by mail to plaintiff. This, of course, does not take the place of proper service, but as to this fact the evidence is by no means convincing. Heckel's testimony upon this question as to whether he received the papers from his wife and mailed them is as follows: 'Q. The sheriff of Dunn County served some papers in 1923, did he, about taxes? A. I can't say for sure as I can't remember. Q. Well, did you get some papers about taxes being due on the land? A. Yes, I used to get them but since it has been foreclosed I am not sure whether I did. Q. In the year 1923, the latter part of the year 1923, did the sheriff leave any papers at your place with you or your wife? A. I can't remember.' Later, he testified again: 'Q. I think that about the time we adjourned we were talking something about taxes and some papers that you received at your place? A. Yes, I looked and can't find them. Q. There were some papers left at your place, were there, by the sheriff? A. Yes, but I can't find them. I don't know whether I sent them off.' Later he testified with more assurance, but on the whole of his testimony it is doubtful if he knows anything of this tax notice or of the contents of any papers left with him or with his wife by the sheriff, if there were any such papers left.

"Upon consideration of all the evidence relative thereto it is my opinion the tax deeds must be set aside and an opportunity given plaintiff to redeem.

"In this connection I find that defendants paid for and on account of tax certificates, taxes and expenses the following sums: February 10, 1923, for tax certificate, Exhibit 213, $49.50; February 10, 1923, for tax certificate, Exhibit 213, $49.50; February 16, 1923, for expense, Exhibit 160, $35; February 25, 1924, for subsequent taxes, Exhibit 108, $800.15; July 15, 1925, for subsequent taxes, Exhibit L, $100. These several sums in the event of redemption will bear interest at the rate of 6 per cent from the several dates stated.

"*On Crops, Rents and Profits.* The defendants knew the conditions and stipulations embodied in the contract for the sale of the land to

Heckel. . . . It is known as 'Crop Contract for the Sale of Land' and provides that one half of all the grain to be sown and grown on the premises sold shall be paid the plaintiff. . . . The parties also stipulated that until the delivery of one half of the grain 'the legal title to and ownership and possession of all said grain raised during each and every year shall be and remain in the first part.' The parties to the contract had an undoubted right to incorporate in the contract such lawful provisions as they agreed upon and the courts must respect and give force to those stipulations. No party to this suit is complaining about such stipulations. Merchants' State Bank v. Sawyer Farmers Co-op. Asso. 47 N. D. 375, 14 A.L.R. 1353, 182 N. W. 263. The defendant bank had chattel mortgages on Heckel's share of the crop the years 1920, 1921, 1922 and 1923. These chattel mortgages were certainly subject and subordinate to the contract.

"The evidence respecting the crops prior to 1920 is not of that character as to enable this court to determine what, if any, of the owner's share was taken or received and not accounted for by the defendant bank or any of the defendants, and consequently, crops prior to 1920 are not considered herein."

No purpose may be served by abstracting in this opinion the evidence regarding crops; no principle of law is involved nor anything of value as precedent. We have examined the evidence with care and adopt on this subject the ultimate findings of the trial court, who saw and heard the witnesses, except in so far as hereinafter modified.

For the years 1920, 1921, and 1922, the trial court charged the defendant bank and John Muggli with the value of such crops as they received on which the plaintiff had a lien under her sale contract, namely: for 1920, $516.83, with interest at 6 per cent per annum from May 8, 1921; for 1921, $397.00, with interest at 6 per cent per annum from January 1, 1922; for 1922, $400.00, with like interest from January 1, 1923. Exploring the record we fail to find the defendants received more than $199.00 from the 1921 crop and we reduce the judgment for that year and allow but $199.00 and interest. Nor does the evidence warrant finding the defendant John Muggli liable for these items. As thus modified the judgment in respect to those years stands.

In 1923, William Wilke was looking after the crops personally, and

the trial court says "the evidence does not disclose what was done with the 1923 crop with such degree of certainty that this court feels justified in making findings as to said crop,"—and we are of the same mind.

The tax deed having come into existence in August, 1923, and the grantee having assumed ownership and possession, the land was rented to Heckel by John Muggli for 1924, and by the Richardton Corporation for 1925, 1926, 1927 and 1928, on the basis of one-fourth of the crop to the landlord. The evidence covering these years was not definite enough to enable the trial judge to find the actual value of or proceeds received from such crops as rents, and he says that therefore "the value of the use and occupation, that is the rental value of the land, is the only basis remaining for a just and equitable determination of the rights of the parties for those years." We agree with this conclusion,—but we reduce the rentals from $422.50 per annum and interest, as allowed by the trial court, to $350 per annum and interest at 6 per cent from January first following each year named. For the 1924 rental, judgment will be entered against John Muggli only, and for 1925, 1926, 1927 and 1928, against the Richardton corporation only.

That part of the judgment of the district court cancelling the Heckel contract for the purchase of the land is approved, as are the provisions relating to set-offs for taxes paid and the payments of the balance of rents to plaintiff.

As modified the judgment of the trial court is affirmed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL, and BURKE, JJ., concur.

Mr. Justice NUESSLE did not participate, Honorable C. W. BUTTZ, Judge of Second Judicial District, sitting in his stead.