WILLISTON COOPERATIVE CREDIT UNION, Plaintiff and Appellee,

v.

Verlin FOSSUM a/k/a Verlin L. Fossum and Richard A. Jensen, Defendants and Appellants,

and

Loye A. Ashton, a/k/a L.A. Ashton; Clifford E. Roth, Sr.; C. Eugene Roth, Jr.; Roth Realty; Oilfield Safety, Inc.; First National Bank & Trust Co. of Williston, American State Bank & Trust Co.; State of North Dakota, acting through Workmen's Compensation, through Job Service of ND, and through the State Tax Commissioner and the Department of Revenue; Midwest Federal Savings Bank; Metropolitan Federal Savings Bank; United Accounts, Inc.; United States of America, acting through the Dept. of the Treasury; William Snyder & Sons, Inc.; and Manger Insurance, Inc., Co–Defendants.

Civ. No. 870346.

Supreme Court of North Dakota.

Aug. 15, 1988.

Anseth & Zander, Williston, for defendants and appellants; Janet Holter Zander (argued).

Nelson & Hickman, Williston, for plaintiff and appellee; Linda L. Hickman (argued).

LEVINE, Justice.

Verlin L. Fossum and Richard A. Jensen appeal from a summary judgment in favor of Williston Cooperative Credit Union. We affirm in part, reverse in part and remand.

Appellee Williston Cooperative Credit Union (Williston Cooperative) obtained a money judgment against William H. Seay on May 4, 1983. Under NDCC § 28–20–13,[1] that judgment became a lien

---

1. NDCC § 28–20–13 provides in part:

"On filing a judgment roll upon a judgment that directs the payment of money, the clerk of the district court in which the judgment was rendered shall docket the judgment in a separate record to be known as the 'judgment docket'. The judgment may be docketed in any other county upon filing with the clerk of the district court of that county a transcript of the original judgment docket. The judgment is a lien on all the real property, except the homestead, of every person against whom the judgment is rendered, which the person may have in any county in which the judgment is docketed at the time of docketing or which the person thereafter acquires in the county, for ten years from the time of docketing the judgment in the county in which it was rendered."

on Seay's undivided one-third interest in five lots of the Williston Basin Mineral Technology Subdivision (Williston Basin subdivision) located in Williams County, North Dakota. The five lots are described as follows:

Lots 1-2-3-4 and 5 of the WILLISTON BASIN MINERAL TECHNOLOGY SUBDIVISION, Williams County, North Dakota, according to the Plat thereof on file with the Register of Deeds in and for said County.

Appellants Fossum and Jensen, along with Loye A. Ashton, purchased the same undivided one-third interest from William Seay in September 1983 and gave First National Bank & Trust Co. of Williston (First Nat'l Bank) a mortgage for the purchase price. The mortgage was executed and recorded in October 1983.

Williston Cooperative commenced the present lawsuit in April 1987, requesting, inter alia, (1) a declaration that its judgment lien is superior to every other security interest claimed by any of the defendants,[2] (2) a decree of foreclosure of its judgment lien, and (3) sale of as much of the five lots as would satisfy the judgment against Seay.

Both sides moved for summary judgment, which was granted in favor of Williston Cooperative. The trial court declared Williston Cooperative's judgment lien superior to any subsequently recorded security interest, and decreed foreclosure and sale of an undivided one-third interest in the five lots. Only Jensen and Fossum appeal from the judgment.

■ At issue is whether summary judgment was appropriately granted in favor of Williston Cooperative. Summary judgment is a procedural device available for promptly and expeditiously disposing of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from the undis-

puted facts, or whenever only a question of law is involved. *Umpleby By And Through Umpleby v. State*, 347 N.W.2d 156 (N.D.1984). On appeal from a summary judgment we view the evidence in the light most favorable to the party against whom the summary judgment was granted. *Ibid.*

Jensen and Fossum first argue that the record presents a genuine issue of material fact whether Williston Cooperative knew, when it obtained its judgment against William Seay, that part of the five lots partially owned by Seay was occupied by a third party, C. Eugene Roth. We agree.

■ Jensen and Fossum relied on the affidavit of Kelvin Miller, an employee of Williston Cooperative, that on September 29, 1987, Gene Roth and his company, Oilfield Safety, Inc., were in possession of and doing business from the land. Jensen and Fossum also submitted Fossum's affidavit which in essence set forth deposition testimony of C. Eugene Roth, Jr., given in another lawsuit. Clearly, the deposition testimony is hearsay and as such subject to exclusion upon proper objection. Rule 801, NDREv.

■ Rule 56(e), NDRCivP, requires that affidavits be made on personal knowledge; set forth facts that would be admissible in evidence and show affirmatively that the affiant is competent to testify to the matters included in the affidavits. *See* 6 Moore's Federal Practice ¶ 56.11[1.2] p. 99; *Production Credit Association v. Foss*, 391 N.W.2d 622, 625 (N.D.1986). However, without timely objection, otherwise inadmissible evidence may be considered by the court making a summary judgment determination. *Hadland v. Schroeder*, 326 N.W.2d 709, 714 (N.D. 1982).

**2.** The defendants are: Loye A. Ashton; Verlin L. Fossum; Richard A. Jensen; Clifford E. Roth, Sr.; C. Eugene Roth, Jr.; Roth Realty; Oilfield Safety, Inc.; First National Bank & Trust Co. of Williston; American State Bank & Trust Co.; State of North Dakota, acting through Workmen's Compensation, through Job Service of North Dakota, and through the State Tax Commissioner and the Department of Revenue; Midwest Federal Savings Bank; Metropolitan Federal Savings Bank; United Accounts, Inc.; United States of America, acting through the Department of the Treasury; William Snyder & Sons, Inc.; and Manger Insurance, Inc.

No objection to the Fossum affidavit was made to the trial court, so the affidavit is in evidence for purposes of the summary judgment determination. It recounts that Roth's negotiations for the purchase of lot five and the North 100 feet of lot four began on November 12, 1981; that Roth made a bank withdrawal to start paying for a building on the premises; that Roth constructed a building on the property and that on April 6, 1982, Roth made full payment of $30,000 for the property. The affidavit further discloses that Roth moved into the building and began conducting business in June 1982 in "open and notorious" fashion. Jensen and Fossum argue that this open and notorious occupation gave Williston Cooperative notice of the Roth claim to the property,[3] thereby depriving Williston Cooperative of good faith status, under NDCC § 47–19–41.

NDCC § 47–19–41, North Dakota's recording act, states:

"Every conveyance of real estate not recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed, or deed of bargain and sale, or deed of quitclaim and release, of the form in common use or otherwise, first is deposited with the proper officer for record and subsequently recorded, whether entitled to record or not, or as against an attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance...."

Thus, a judgment lien is valid as against an unrecorded conveyance of which the judgment creditor had no notice at the time the judgment was obtained. *Agricultural Credit Corp. v. State*, 74 N.D. 71, 20 N.W. 2d 78 (1945); *Ildvedsen v. First State Bank*, 24 N.D. 227, 139 N.W. 105 (1912).

■ One with actual knowledge of facts which would put a prudent person upon inquiry as to the claims of others in the property is deemed to have constructive notice of only those facts which an inquiry would have revealed. *See Burlington Northern, Inc. v. Hall*, 322 N.W.2d 233, 238 (N.D.1982); *Putnam v. Dickinson*, 142 N.W.2d 111, 122 (N.D.1966). Thus, actual notice of occupation by the Roths would give Williston Cooperative constructive notice only of those facts which its properly pursued inquiry in all probability would have disclosed. *See also Hunt Trust Estate v. Kiker*, 269 N.W.2d 377, 380 (N.D. 1978); *Harry E. McHugh, Inc., v. Haley*, 61 N.D. 359, 369, 237 N.W. 835, 838–39 (1931).

■ Ordinarily, notice is a question of fact and therefore a bar to summary judgment. *Burlington Northern R.R. v. Scheid*, 398 N.W.2d 114, 116 (N.D.1986). Under NDCC § 47–19–41, notice which would impeach a judgment lienor's good faith is notice of a prior, unrecorded conveyance. *Agricultural Credit*, 74 N.D. at 76, 20 N.W.2d at 80. "Conveyance," as used in the recording act, is defined in NDCC § 47–19–42 as an "instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered, or by which the title to any real property may be affected, except a will or power of attorney." Therefore, notice of a prior, unrecorded written instrument is the only notice which would affect the result in this case, and thus the only notice issue which is material.

■ The question becomes whether the record contains any evidence permitting a reasonable inference (1) that Williston Cooperative had actual knowledge that Gene Roth and Oilfield Safety were in occupation of the property on or before May 4, 1983, the date of the judgment, and (2) that inquiry by Williston Cooperative on or before May 4, 1983, would have revealed a

---

**3.** On November 29, 1983, Jensen, Fossum, and Loye A. Ashton gave to Clifford E. Roth, Sr., and C. Eugene Roth, Jr., d/b/a Roth Realty, a warranty deed for lot five and the north 100 feet of lot four in Williston Basin Mineral Technology Subdivision to the City of Williston, Williams County, North Dakota. The deed was recorded on December 22, 1983.

prior, written instrument[4] evidencing an interest in or affecting title to the property.

The evidence most favorable to Fossum and Jensen is (1) the affidavit of Fossum already discussed; (2) the affidavit of September 29, 1987, stating that the affiant Kelvin Miller "knows [Oilfield Safety] to be conducting business from part of the premises;" and (3) a plat of the Williston Basin subdivision filed August 10, 1983, which contains a notation dated July 25, 1983, signed by Gene Roth, of a contract for deed on lot five, block one, in the name of Oilfield Safety, Inc.

Considering the evidence in the light most favorable to Fossum and Jensen, we believe a finder of fact could reasonably infer that Roth and his business were on the property before May 4, 1983. Further, from the evidence of the plat and Roth's payment and construction of a building, a reasonable inference may be drawn that there was a written contract for deed. Because there are genuine issues and inferences of material fact, Williston Cooperative was not entitled to summary judgment as to that part of the property allegedly owned by C. Eugene Roth.

■ Jensen and Fossum next contend that First Nat'l Bank's purchase money mortgage is first in priority, as a matter of law, because a purchase money mortgage takes priority over a judgment lien under NDCC § 35–03–10.

NDCC § 35–03–10 states:

"A mortgage given for the purchase price of real property at the time of its conveyance has priority over all other liens *created against the purchaser*, subject to the operation of the recording laws." [Emphasis added.]

Thus, a lien against a purchaser of real property is subordinate to a mortgage securing the price of the purchase.

■ However, § 35–03–10 does not apply because Williston Cooperative's judgment lien was not "created against the purchaser" as expressly required in the

statute. Jensen, Ashton, and Fossum gave the mortgage to First Nat'l Bank as security for the purchase price of Seay's interest in lots one through five of the Williston Basin subdivision. Seay was the vendor in that transaction, not a purchaser. The statute does not speak to liens created against the vendor in a real property sale transaction. Therefore, NDCC § 35–03–10 does not give First Nat'l Bank's purchase money mortgage priority over the judgment lien against Seay.

■ Jensen and Fossum next contend that the judgment of foreclosure constitutes unjust enrichment because the Roths "in good faith" improved lot five and the north 100 feet of lot four with a building, and that to avoid unjust enrichment the judgment lien should not be foreclosed, and should be subordinated to the unrecorded deed of Clifford E. Roth, Sr., and C. Eugene Roth, Jr., executed by Jensen, Fossum, and Loye A. Ashton in November 1983 and recorded in December 1983.

In *Benson v. Taralseth*, 382 N.W.2d 649 (N.D.1986), this court held that an owner of land may be forced to pay for improvements made on his property by an occupant where the improvements were made without his knowledge and consent, and where the occupant was of the honest but mistaken belief that he was the owner. Thus, the appropriate relief for the loss of improvements made in good faith, while in possession under color of title, is recovery of the reasonable value of the improvements. *See* NDCC § 32–17–09. Avoidance of foreclosure and rearrangement of priorities among competing security interests are not remedies for unjust enrichment. So, even if there were unjust enrichment, it would not produce the results appellants seek.

■ Jensen and Fossum also argue that a purchase money mortgage is a vendor's lien, subject under § 35–20–04 to the rights of encumbrancers in good faith and for value. Jensen and Fossum contend that because Williston Cooperative, the encum-

---

4. A written contract for deed is a conveyance under NDCC § 47–19–42. *Battersby v. Gillespie,*

57 N.D. 426, 222 N.W. 480 (1928).

brancer, gave no new consideration for its judgment at the time it was docketed, its judgment lien is not superior to the purchase money mortgage.

NDCC § 35–20–04 reads:

"35–20–04. *Vendor's and purchaser's liens on realty subject to rights of subsequent purchaser.* The liens defined in sections 35–20–01 and 35–20–03 are subject to the rights of subsequent creditors without notice, and of purchasers or encumbrancers in good faith and for value."

NDCC § 35–20–01 reads:

"35–20–01. *Vendor's lien on real property for purchase price authorized.* One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer."

NDCC § 35–20–03 deals with purchasers' liens, and Fossum and Jensen do not argue that it applies to these facts.

Appellants cite no case in support of their contention that a third-party purchase money mortgagee is a vendor under NDCC § 35–20–01. Nor has our survey of North Dakota cases produced support for appellants' proposition. To the contrary, this court held in *Bray v. Booker,* 6 N.D. 526, 72 N.W. 933 (1897), construing the identically-worded forerunner to NDCC § 35–20–01, that a vendor's creditor to whom the vendee has promised to pay a portion of the purchase price is not entitled to a vendor's lien, because

"... [the statute's] plain language is that the lien is given to the one who sells, and the implication is that no one else is entitled to such a lien. Our statutes were intended to clear up the law on the subject of vendor's liens in this state, and cover the whole ground. They settle the mooted questions whether a lien exists in such a case, when it is waived, whether it can be assigned, and the person who may claim it. That person is the seller himself, and no one else." *Bray v. Booker,* 6 N.D. at 529, 72 N.W. at 933–34.

We conclude that a third-party mortgagee is not a "vendor" under NDCC § 35–20–01, because he is not "the seller himself" and § 35–20–04 does not apply.

The summary judgment as to the Roth property is reversed. The remainder of the summary judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., and PEDERSON, S.J., concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.