Ervin MUND, Jerome Voegele and Dr. Louis Tepoel, Plaintiffs and Appellees,

v.

Helen A. RAMBOUGH, Defendant and Appellant,

and

The State of North Dakota and all persons unknown claiming any estate or interest in, or lien or encumbrance upon the property described in the Complaint, Defendants.

Civ. No. 880072.

Supreme Court of North Dakota.

Nov. 10, 1988.

Vogel Law Firm, Mandan, for defendant and appellant; argued by Colette N. Bruggman.

Lucas & Smith, Bismarck, for plaintiffs and appellees; argued by Sheldon A. Smith.

Thomas B. Tudor, Bank of North Dakota, Bismarck, for defendants. No appearance.

ERICKSTAD, Chief Justice.

The plaintiffs initiated this action to quiet title to real property in Burleigh County. Helen Rambough claimed an interest in the property as the previous owner. The district court granted the plaintiffs' motion for partial summary judgment and Helen appeals. We reverse in part and remand.

The land in question was purchased by Dale and Helen Rambough of Braddock, North Dakota, in 1940 at a sheriff's sale. They bought a total of 640 acres split into four parcels located in Burleigh County. They farmed the land until 1972 when it was leased to their son, Rassen Rambough, on a one-fourth to the owner, three-fourths to renter, crop share basis. Dale passed away in 1978, and Helen is now dependent on the crop share income and a social security check for her support. Helen paid the taxes on the land until the year 1980 when Rassen paid the taxes. Helen assumed Rassen would continue to pay the taxes in subsequent years while Rassen assumed his mother would pay the taxes. As a result of this misunderstanding, the taxes became delinquent in 1981.

On December 13, 1982, the Burleigh County Auditor's Office issued a county certificate of sale for taxes to Burleigh County for each of the four parcels of land, in the amount of the delinquent taxes. Unless the land was redeemed in the manner provided for by law, after three years the auditor's office would issue a deed to the county.[1]

1. Section 57-27-05, N.D.C.C., provides:
   *"Tax deed to be issued.* At the expiration of the period of redemption, and after the filing of the proof of service of the notice of expiration of such period, the county auditor, if no redemption has been made, on surrender of the certificate of tax sale to him, shall execute to the owner of the certificate, his heirs and assigns, in the name of the state, a deed of the land remaining unredeemed, which shall vest in the said certificate owner, his heirs and assigns, an absolute estate in fee simple in

Helen did not redeem the property, and in late May of 1986, the Burleigh County Auditor's Office sent a notice of expiration of the period of redemption for each parcel of land to both Helen Rambough at Braddock, North Dakota, and to the Bank of North Dakota which was mortgagee in connection with a mortgage on the property. Helen was out of the state visiting family, and, as arranged, Rassen regularly picked up her mail at the post office. On the day the notices were received, Rassen's daughter, Audrey, appeared at the Braddock post office, and signed for the notices which had been sent by certified mail to Helen Rambough, return receipt requested. Apparently without opening the envelopes or notifying her grandmother, who is visually handicapped as a result of cataracts and deteriorating retinas, Audrey took the notices to her grandmother's home and placed them on the kitchen table along with the rest of the mail.

When no response was made to the notices of expiration of the period of redemption, the Burleigh County Auditor's Office issued tax deeds to the county on October 15, 1986. Burleigh County, at a tax sale on November 18, 1986, then sold the land, four parcels in all, in Township 137 North of Range 75 West in Burleigh County, to Ervin Mund, Jerome Voegele, and Dr. Louis TePoel (plaintiffs). The Northwest Quarter (NW¼) of Section Twenty–Five (25), on which taxes, interest, and penalties were due in the amount of $1,541.06, was sold for $4,200.00. Land described as the North Half of the Northeast Quarter (N½NE¼),

the Southeast Quarter of the Northeast Quarter (SE¼NE¼), and the Northeast Quarter of the Southeast Quarter (NE¼SE¼) of Section Twenty–Six (26), on which taxes of $1,573.97 were due, was sold for $3,100.00. The Southeast Quarter (SE¼) of Section Twenty–Five (25), on which taxes were due in the amount of $1,469.52, was sold for $4,400.00. These lands were bought by Mund and Voegele. TePoel bought the Southwest Quarter (SW¼) of Section Twenty–Five (25), on which taxes were due·in the amount of $1,484.61, for $3,500.00. The total sum of the delinquent taxes, plus interest and penalties, was $6,069.16. The total purchase price for the 640 acres amounted to $15,-200.00. Mund and Voegele brought this action to quiet title to the land in them and TePoel was later added as a plaintiff by stipulation. Helen answered and counterclaimed, claiming an interest in the property by virtue of the fact that she was the previous owner and had not received proper notice. The district court granted the plaintiffs' motion for partial summary judgment and Helen brought this appeal.

On appeal, Helen asserts:

The district court erred in granting plaintiffs' motion for summary judgment as there existed the following material questions of fact concerning the following:

1. Whether or not Helen Rambough received notice of the expiration of the period of redemption; and

2. Whether or not the Burleigh County Auditor's Office actually deposited in the

such lands, subject to the claims of the state or other taxing districts on account of taxes or other liens or encumbrances, including installments of special assessments certified or to be certified to the county auditor or which may become due subsequent to the time of the service of the notice of expiration of the period of redemption. Such deed shall be executed by the county auditor under his hand and seal. Such deed shall be prima facie evidence of the truth of all facts therein recited and of the regularity of all the proceedings from the assessment and valuation of the land by the assessor up to the execution of the deed."

The period of redemption is specified in § 57–28–01, N.D.C.C., which provides:

*"Notice of expiration of period of redemption to be given.* On or before June first in each year, the county auditor shall give notice of the expiration of the period of redemption as to all tracts of real estate sold to the county, where *three or more years* have expired from the date of the original, or any subsequent, tax sale certificates issued or deemed to have been issued to the county, which have not been redeemed or assigned." [Emphasis added.]

Section 57–28–09, N.D.C.C., further provides in relevant part:

*"Tax deed to be issued.* After the expiration of the period of redemption, the county auditor shall issue a tax deed to the county, in the usual form, for all real estate which was not redeemed within the period of redemption."

United States mail letters containing Notices of Expiration of Period of Redemption to Helen Rambough.

Additionally, Helen contends:

Sections 57–28–04 and 57–27–02 of the North Dakota Century Code do not meet the requirements of Equal Protection and Due Process as guaranteed by the State and Federal Constitutions.

Summary judgment is a procedural device available for promptly and expeditiously disposing of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or whenever only a question of law is involved. *Williston Co-op. Credit Union v. Fossum,* 427 N.W.2d 804, 806 (N.D.1988) (citing *Umpleby By And Through Umpleby v. State,* 347 N.W.2d 156 (N.D.1984)). On appeal from a summary judgment we view the evidence in the light most favorable to the party against whom the summary judgment was granted. *Id.*

Helen claims that there are material issues of fact as to whether or not she received proper notices from the Burleigh County Auditor's Office of the expiration of the periods of redemption. She maintains that she had no actual notice of the expiration of the period of redemption and did not realize that her land would be sold for nonpayment of taxes or that it had been sold until she was notified by a neighbor shortly after the sale. Helen did not sign the receipt required to be signed in conjunction with receipt of registered mail; it was instead signed by her granddaughter, and Helen now contends that this is one factor which caused the notice to be improper. Helen also claims that the discrepancy between the date on the affidavits of service and the dates the notices were actually mailed results in a statutory violation by the county auditor and gives rise to a question of fact as to when the notices were actually mailed.

■ The general rule is that in the absence of custom, express contract or statute, notice sought to be served by mail is not effective until it is received by the one sought to be served. *General Factors,*

*Inc. v. Beck,* 99 Ariz. 337, 409 P.2d 40, 43 (1966); *Boeck v. State Highway Commission,* 36 Wis.2d 440, 153 N.W.2d 610 (1967) (in absence of statute, service of notice not effective until receipt). In North Dakota, where the county has acquired title to property after sale to it for delinquent taxes, section 57–28–04, N.D.C.C., provides for service of notice by registered or certified mail and states in relevant part:

> "The county auditor shall serve the notice of the expiration of the period of redemption upon the owner of the record title of the real estate sold to the county for taxes.... Said notice shall be served by registered or certified mail, and a registry and return receipt shall be demanded and filed with proof of service."

In this state the right of redemption has been assiduously guarded. *Griffeth v. Cass County,* 244 N.W.2d 301, 304 (N.D. 1976). Service of the notice of the expiration of the period of redemption in the form, substance and kind prescribed by statute is jurisdictional. *Brink v. Curless,* 209 N.W.2d 758, 767 (N.D.1973), overruled in other part by *City of Bismarck v. Muhlhauser,* 234 N.W.2d 1, 5 (N.D.1975). The requirements of the statute as to the service and proof of service of the notice required to terminate an owner's right to redeem from a tax sale are considered "mandatory, are construed strictly in favor of the owner and generally no presumptions with regard to proper service and return thereof will be indulged in." *Wilke v. Merchants' State Bank of Richardton,* 61 N.D. 351, 237 N.W. 810 at 812 (1931); 72 Am.Jur.2d § 1019.

■ According to the Burleigh County Auditor's Office, all notices of expiration of periods of redemption were targeted for mailing on May 30, 1986, and the affidavits of service were so dated. Some notices, including the ones sent to Helen Rambough, were apparently delivered to the post office prior to May 30, causing a discrepancy in the date on the affidavit of service and the date the notice was actually mailed. Helen asserts that this discrepancy results in an improper service of the

notices and is a violation of section 57–28–04, N.D.C.C., which requires proof of service. While we do not condone the practice of the Burleigh County Auditor's Office in predating affidavits of service, and thus putting the validity of such documents in question, we conclude that the discrepancies in the affidavits and actual mailing dates are not determinative of the issue here as there is no question in this case that the notices were actually and timely received at the Braddock post office. Helen does not contend that the notices were not mailed during the time period specified by statute. She merely asserts that they were not mailed on the dates the affiant claims they were mailed. This does not raise a question of material fact which precludes summary judgment.

■ It is the general rule that where the service of notice by mail or registered mail is expressly required or authorized by statute in tax proceedings, and the conditions precedent to mailing, such as determination of sendees, proper addressing, and timeliness have been fulfilled, the service is complete and constitutes a legal service when the notice is mailed, or registered and mailed, according to the United States postal laws and regulations, by depositing it in a place of mailing, and that actual receipt thereof is not essential. *Cota v. McDermott,* 73 N.D. 459, 16 N.W.2d 54 (1944); 155 A.L.R. 1279, 1283. "Where the officer charged with the duty of giving notice of expiration of the period of redemption to delinquent taxpayers follows the letter of the statute in so doing, ... the requirement as to service of notice is satisfied although the taxpayer does not receive such notice." *McDonald v. Abraham,* 75 N.D. 457, 28 N.W.2d 582, 585 (1947).

■ The record indicates that the notices were certified and deposited in the mail, delivered to the Braddock post office, correctly addressed to Helen Rambough, actually received and signed for by Helen's granddaughter and placed on Helen's kitchen table in her home with the rest of her mail.[2] Section 57–28–04, N.D.C.C., requires the county auditor to notify the landowner of the expiration of the period of redemption by means of registered or certified mail, return receipt requested. We said in *Brown v. Otesa,* 80 N.W.2d 92, 99 (N.D.1957), that

"[w]here the law prescribes a written notice as a method of giving information, the receipt of a letter containing the information is conclusive proof of knowledge of the purpose thereof. Whether as a matter of fact the recipient reads or takes notice of the letter makes no difference, because the notice contemplated has been given."

The Burleigh County Auditor's Office fulfilled the statutory notice requirements of section 57–28–04, N.D.C.C., when it mailed the notices, by certified mail,[3] return receipt requested, to Helen's address as found on the certificate of title filed with the Register of Deeds of Burleigh County. The fact that Helen did not actually receive the notices in her hand, or read them if she actually did see them, or have them read to her because of her visual handicap, does not cause the service by the county auditor's office to be improper.

■ Helen next contends that, even if service were made pursuant to section 57–28–04, N.D.C.C., the statute is unconstitutional as a violation of equal protection of the laws under Article I, Sections 21 and 22

---

**2.** Only one case was found during our research which would support Helen's position that service of notice by registered mail, return receipt requested, is improper when the receipt is signed by another member of the family. In *Fowler v. Stubbings,* 203 Mich. 383, 169 N.W. 17, 18 (1918), the court found it doubtful that a notice sent by registered mail correctly addressed to William Stubbings but received by and receipted for by his son, William Stubbings, Jr., where the notice was not brought to the attention of the senior Mr. Stubbings, was prima facie evidence of service upon the proper person. We do not find this case persuasive here because of the great weight of precedent in support of the plaintiffs' position, and the antiquity of the *Fowler* decision with no indication of trend in the *Fowler* direction after 70 years.

**3.** While the Affidavits of Service make reference to service by *registered* mail, the return receipts indicate the notices were actually sent by certified mail. (Plaintiff's Exhibits 1–4).

of the North Dakota Constitution [4] and Amendment Fourteen, Section 1 of the United States Constitution, and also as a violation of due process of law under Article I, Section 9 of the North Dakota Constitution [5] and Amendment Fourteen, Section 1 of the United States Constitution.

Helen claims that permitting service of notice by registered mail under section 57–28–04, N.D.C.C., while requiring personal service under section 57–27–02, N.D.C.C., results in differentiated treatment of service of the notice of expiration of the period of redemption based solely on the classification of ownership of the tax certificates. In the first instance the title has been transferred to the county, while in the second instance the title is still in the delinquent taxpayer. She contends this classification violates her right to equal protection under the law.

Every legislative enactment is presumed to be valid, and will be upheld unless it is clearly shown that the statute contravenes the State or Federal Constitution. *Patch v. Sebelius,* 320 N.W.2d 511 (N.D.1982). To determine the constitutionality of section 57–28–04, N.D.C.C., we must first attempt to ascertain the appropriate standard of review to determine whether or not the equal protection of the laws has been violated.

We have previously discussed the three standards of review applicable in determining equal protection issues relevant to the Federal Constitution and to our State Constitution. *Nygaard v. Robinson,* 341 N.W. 2d 349 (N.D.1983). When a fundamental right or an inherently suspect classification is involved, courts have required strict judicial scrutiny under which a statute will be held invalid unless it is shown that the statute promotes a compelling governmental interest and the distinctions drawn by the statute are necessary to further the purpose of the statute. *Nygaard, supra,* 341 N.W.2d at 358. "The intermediate standard of review is usually applied when 'an important substantive right' is involved." *Hanson v. Williams County,* 389 N.W.2d 319, 325 (N.D.1986) citing *Heath v. Sears, Roebuck & Co.,* 123 N.H. 512, 464 A.2d 288 (1983). When the intermediate standard of review is applied, this standard requires a close correspondence between statutory classifications and legislative goals. *Hanson, supra,* 389 N.W.2d at 324. When statutes govern the rights of parties with respect to business and commercial affairs, courts have usually or commonly applied the rational basis test. *Nygaard, supra.* The burden is then on the challenger to establish "that the classification bears no reasonable relation to a conceivable legislative purpose." *Id.* at 359, quoting *Newman Signs, Inc. v. Hjelle,* 268 N.W.2d 741, 758 (N.D.1978).

Helen asserts the classification we found unconstitutional in *Christman v. Emineth,* 212 N.W.2d 543 (N.D.1973), is analogous to her situation. There the classification established in sections 47–10–21 and 47–10–22, N.D.C.C., distinguished transfers of coal by direct grant from transfers of coal by reservation or exception. It placed a burden upon the latter type of transfer

---

**4.** The North Dakota Constitutional provision guaranteeing equal protection of the laws is Article I, Section 21, which reads:

"*Section 21.* No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

Rambough also relies on Article I, Section 22 of the North Dakota Constitution, which reads:

"*Section 22.* All laws of a general nature shall have a uniform operation."

**5.** Article I, Section 9 of the North Dakota Constitution reads:

"*Section 9.* All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct."

Rambough might also have had in mind the following part of Article I, Section 12, of the North Dakota Constitution which guarantees due process of law:

"No person shall ... be deprived of life, liberty or property without due process of law."

that it didn't place upon the former. We said:

> "If the manner or method by which mineral rights are severed from the surface cannot be the basis of a classification for taxation purposes [referring to our holding in *Northwestern Improvement Co. v. Morton County*, 78 N.D. 29, 47 N.W.2d 543 (1951) ], it is inconceivable that the method by which title to coal is acquired could be a basis for classification for assessment purposes or any other purpose." *Christman, supra,* 212 N.W.2d at 555.

> "We can conceive of no reasonable basis for requiring that the nature, length, width and thickness of coal reservations be described when such a description is not required of grants of coal. It would seem that if the description was of value it would be so regardless of how title to the coal was acquired." *Id.* at 556.

We concluded that the classification inherent in sections 47–10–21 and 47–10–22, N.D.C.C., was unreasonable and the resulting discrimination invidious, and therefore the statutes were unconstitutional as a violation of equal protection.

If we were to apply the rational basis standard what we said in *Snyder's Drug Stores, Inc. v. North Dakota State Board of Pharmacy*, 219 N.W.2d 140, 148 (N.D. 1974), would be pertinent:

> " 'It is also well established that a classification although discriminatory is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. [Cites omitted.] Furthermore, a court need not know the special reasons, motives, or policies of a State legislature in adopting a particular classification, so long as the policy is one within the power of the legislature to pursue, and so long as the classification bears a reasonable relation to those reasons, motives, or policies.' *Signal Oil and Gas Company v. Williams County*, 206 N.W.2d 75 at 83 (N.D.1973)."

It is not inconceivable to us that the Legislature could have discerned a rational basis for requiring a county owning tax certificates and holding title to give notice of the expiration of the period of redemption to the landowner by one means while requiring a private person owning tax certificates to give notice by another means. Accordingly, under that scope of review, we do not find the classification to be arbitrary or unreasonable, nor do we find the discrimination from the classification to be invidious.

■ However, our analysis in this case cannot end with the rational basis inquiry, for it appears to us that an inference exists that the property in question concerns a homestead which,[6] in our state, involves an "important substantive right" which requires an examination of this matter under the intermediate standard of review that we have applied in *Johnson v. Hassett*, 217 N.W.2d 771 (N.D.1974); *Arneson v. Olson*, 270 N.W.2d 125 (N.D.1978); *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979); and *Patch v. Sebelius, supra.*

■ Our state has long recognized the significance of a homestead as evidenced by Article XI, Section 22 of our state constitution dating back to its original adoption in 1889.[7] Except in specific cases,[8] a

---

**6.** Dale and Helen farmed the land from 1940 until 1972, although Helen now has a residence in Braddock.

**7.** Article XI, Section 22 of our State Constitution reads in part:

> "*Section 22.* The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws, exempting from forced sale to all heads of families a homestead, the value of which shall be limited and defined by law; ..."

**8.** Section 47–18–04, N.D.C.C., provides:

> "*When homestead subject to execution.* A homestead is subject to execution or forced sale in satisfaction of judgments obtained in the following cases:
> 1. On debts secured by mechanics' or laborers' liens for work or labor done or performed or material furnished exclusively for the improvement of the same.
> 2. On debts secured by mortgage on the premises executed and acknowledged by both husband and wife, or an unmarried claimant.

homestead is statutorily exempt from a judgment lien, execution or forced sale.[9] In *Federal Land Bank of St. Paul v. Gefroh,* 418 N.W.2d 602 (N.D.1988) and *Podoll v. Brady,* 423 N.W.2d 151 (N.D.1988), we held that section 47–18–04, N.D.C.C., permitting the enforcement of a mortgage on a homestead, is not an unconstitutional violation of Article XI, Section 22 of the North Dakota Constitution. Unlike the issue in those two cases, the issue in this case does not arise over the voluntary encumbrancing of the homestead.[10]

Crucial as homes are to the well-being of our people, the right not to be easily deprived of a home seems obviously to rise to the level of an "important substantive right." Under these circumstances unless there is a close correspondence between the statute herein under attack and the legislative object of the statute, the statute must be stricken as unconstitutional. We have been shown no close correspondence and we can conceive of none other than expedition of the tax processes. Under these circumstances we are convinced that the rights of the homeowner must prevail over the expedition of the processes, and personal service by the sheriff must be required of the notice of the expiration of the period of redemption upon a resident of this state as is now required by section 57–27–02(2), N.D.C.C. This requirement will not unduly burden the tax processes.

Under this analysis the notice provided under section 57–28–04, N.D.C.C., is insufficient as to the homestead but sufficient as to the other real property. In effect, we hold that as to the homestead, section 57–28–04, N.D.C.C., is violative of Article I, Section 21 of the North Dakota Constitution.

In this light, the judgment must be reversed to the extent that it affects a homestead and the case must be remanded for a determination of the homestead and modification of the judgment accordingly.

To avoid the repercussions that might otherwise occur from this decision, we will apply a modification of the "Sunburst Doctrine" as we did in *Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D.1974).[11] The rule we have laid down here shall apply to this case and to tax proceedings which occur thirty days subsequent to the date the mandate is issued in this case.

█ This does not yet end our review as Helen also claims that service of notice by registered or certified mail as provided for

---

3. On debts created for the purchase thereof and for all taxes accruing and levied thereon.
   4. On all other debts when, upon an appraisal as provided by section 47–18–06, it appears that the value of said homestead is more than eighty thousand dollars over and above liens or encumbrances thereon, and then only to the extent of any value in excess of the sum total of such liens and encumbrances plus said eighty thousand dollars."

9. Section 47–18–01, N.D.C.C., provides:
   "*Homestead exemption—Area and value.* The homestead of any person, whether married or unmarried, residing in this state shall consist of the land upon which the claimant resides, and the dwelling house on that land in which the homestead claimant resides, with all its appurtenances, and all other improvements on the land, the total not to exceed eighty thousand dollars in value, over and above liens or encumbrances or both. The homestead shall be exempt from judgment lien and from execution or forced sale, except as otherwise provided in this chapter. In no case shall the homestead embrace dif-

ferent lots or tracts of land unless they are contiguous."
   Further, section 28–22–02(7), N.D.C.C., provides:
   "*Absolute exemption.* The property mentioned in this section is absolutely exempt from all process, levy, or sale:

   \*   \*   \*   \*   \*   \*

   7. The homestead as created, defined, and limited by law."

10. In fact, the record indicates the only lien on the entire 640 acres is a mortgage from the Bank of North Dakota alleged to be approximately $18,600.00. The record does not indicate the value of the land; however, counsel for Helen asserted that the land "if it is worth a penny, it is worth a hundred and fifty to two hundred dollars an acre." Transcript of Proceedings at 6.

11. *See Walker v. Omdahl,* 242 N.W.2d 649 (N.D. 1976) (explaining a modification of the "Sunburst Doctrine" named after an opinion by Justice Cardozo in *Great Northern Ry. Co. v. Sunburst Oil and Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254 (1932)); 60 Harv.L.Rev. 437 (1947); 71 Yale L.J. 907 (1962).

in section 57–28–04, N.D.C.C., results in a denial of due process. In order to be given a meaningful opportunity to be heard, Helen contends she must receive actual notice of the expiration of the period of redemption. Helen asserts that, as section 57–27–02(2), N.D.C.C.,[12] requires personal service, its provisions are reasonably calculated to provide the notice essential to meet the requirements of due process. Therefore, all holders of tax certificates, both county and private persons, should be required to give personal notice of the expiration of the period of redemption to the landowner.

Procedural due process requires the right to notice and a meaningful opportunity for a hearing appropriate to the nature of the case. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed. 2d 265 (1982); *Powell v. Hjelle*, 408 N.W.2d 737 (N.D.1987). The Legislature has determined that when title to property subject to delinquent taxes has been transferred to the county, service of notice of the expiration of the period of redemption by registered or certified mail, return receipt requested, is the means reasonably calculated to inform the landowner of the expiration of the period of redemption. The Legislature may have been influenced by the fact that further notices are required pursuant to sections 57–28–06, and 57–28–14, N.D. C.C., before the property may be sold to the public.[13] The fact that a private person owning a tax certificate must give notice by means of personal service does not make inadequate the service by registered mail when the county has acquired the title. In either case, the landowner then has an opportunity to redeem prior to the land being sold to the public at a tax sale.[14]

The Legislature has devised a scheme by which a landowner is given notice and has a meaningful opportunity to be heard prior to his property being sold at a tax sale for delinquent taxes. The fact that the Legislature does not require the county to personally serve notice, or give actual notice, to the landowner of the expiration of the period of redemption when the title has been transferred to the county does not render this statutory scheme violative of due process.

For the reasons stated herein, we reverse the judgment as it relates to the equal protection of the laws argument as it affects a homestead and remand for determination of the homestead and for modification of the judgment accordingly.

GIERKE, VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, Justice, concurring and dissenting.

I concur in all of the majority opinion that supports affirming the summary judgment. I dissent from that portion which declares NDCC § 57–28–04 unconstitutional as applied to a homestead. I would affirm the judgment.

Issues concerning a homestead are ordinarily fact-dependent, unless there is no dispute over the facts or the inferences that may be drawn from those facts; *see Farmers State Bank v. Slaubaugh*, 366 N.W.2d 804 (N.D.1985). *See also Brokken*

**12.** Section 57–27–02(2), N.D.C.C., provides in relevant part:

"*Notice of expiration of period of redemption —Contents of notice.* The procedure upon presentation of a tax sale certificate shall be as follows:

"2. A notice of expiration of the period of redemption shall be delivered to the sheriff who shall serve it or cause it to be served personally upon·the owner, if known to be a resident of this state, but if the owner is a nonresident of this state, the notice shall be served by registered or certified mail addressed to the owner at his last known post-office address and by publication...."

**13.** Section 57–28–06, N.D.C.C., requires the county auditor to publish notice of the expira-

tion of the period of redemption as to all tracts of real estate upon which notice was served by registered or certified mail.

Section 57–28–14, N.D.C.C., requires a notice of the annual sale of land acquired by tax deed to be posted on the front door of the courthouse and also published in the county newspaper, such notice describing all real estate to be sold, along with the minimum sale price.

**14.** Section 57–27–04, N.D.C.C., provides that the time for redemption of lands from a tax sale expires ninety days after the contemplated service of the notice of expiration of the period of redemption.

*v. Baumann,* 10 N.D. 453, 88 N.W. 84 (1901). Here, no issue was raised that a homestead right existed. Such a claim would require supporting facts relating to the debtor's intent and conduct. *See Farmers State Bank v. Slaubaugh, supra* at 808.

In a summary judgment proceeding, the party against whom summary judgment is sought must raise a genuine issue of material fact to defeat the motion. Rambough did not plead homestead, did not in affidavit claim homestead and did not allude to any issue of homestead, either at the trial court level or, to my knowledge, on appeal. Consequently, there is no genuine issue or reasonable inference of material fact and summary judgment was appropriately granted by the trial court. *See First National Bank & Trust Co. of Williston v. Jacobsen,* 431 N.W.2d 284 (N.D.1988). I believe the majority's constitutional analysis of § 57–28–04, NDCC, as it applies to a homestead is, therefore, advisory only.

I would affirm the judgment.