T. H. McNEILL v. GEORGE FULLER et al.

*Action for Specific Performance—Sale of Decedent's Real Estate—Purchase of Decedent's Land by Administrator— Color of Title—Adverse Possession—Landlord and Tenant —Vendor and Purchaser—Statute of Frauds—Accounting by Administrator.*

1. Where A, an administrator, asked a bidder to attend the sale by him of his intestate's land and to make the property bring its value and told him that if he did not have the money to pay the price he (the administrator) would get it for him, and soon after the sale A, as administrator, made a deed to the bidder who, three days later, reconveyed to A individually, and no money passed between the parties; *Held*, that, notwithstanding A claimed that the land was not bid off for him at the sale, the just inference was that A purchased it through his agent, the bidder.

2. Where an administrator, in making a report of the sale of personalty, stated that the proceeds were insufficient to pay the debts; that intestate died seized of certain land in which the widow claimed a dower, and that she and the heirs desired to have the land outside of the dower sold to pay debts, but no summons was issued or served on the heirs making them parties and no order of sale was made; *Held*, that while the allegations contained in such report might have sufficed as an informal complaint, if proper parties had been made and an order of sale had followed, yet, in the absence of such parties and order, the allegations were not sufficient to sustain a sale of the land by the administrator.

3. Where an administrator procured a bidder to buy his intestate's land at an unauthorized sale and the bidder immediately reconveyed to the administrator individually, and no money passed at either transaction; *Held*, that the bidder's deed to the administrator was color of title without reference to the lack of the administrator's authority to sell or to the character of the transaction.

4. For the purposes of acquiring title by prescription the possession of a tenant or of a purchaser under a bond for title, is the possession of the landlord or of the vendor respectively.

121—27

5. While a bargainee of land is not bound to take a defective title from his bargainor, it is not necessary that the latter should have a perfect title at the date of the contract to sell, but it is sufficient if the title is perfect at the time the contract is attempted to be enforced by either party thereto.

6. A party to a contract for the purchase of land, who has given his notes for the purchase price, is at the wrong end of the contract to plead or take advantage of the Statute of Frauds when the vendor, who has executed no bond for title, is nevertheless able and willing to convey a good title.

7. An administrator who procured a bidder to buy his intestate's land at a sale made by himself as administrator and, after making a deed to the bidder, took a reconveyance to himself individually, (no money having passed in either transaction) and reported to the Court that the land fetched a certain sum, is chargeable with such sum and interest from the date of the sale although he disclaimed purchasing the land on his own account and, immediately after the conveyance to himself, contracted to sell to other parties at a less price.

CIVIL ACTION for the enforcement of a contract for the purchase of land tried before *Coble, J.*, and a jury at April Term, 1897, of CUMBERLAND Superior Court. There was a verdict for the defendant and from the judgment thereon plaintiff appealed.

*Mr. H. L. Cook*, for plaintiff (appellant).
*Mr. N. W. Ray*, for defendant.

FURCHES, J.: This is an action for specific performance, in the nature of a foreclosure. The plaintiff alleges that he is the administrator of one Fenner Fuller, deceased, and as such administrator he procured an order of Court, sold the land in controversy, to pay debts of his intestate; that at said sale Marion Stephens became the purchaser at the price of $260; that he did not get Stephens to bid off the property for him, but he asked Stephens to attend to the sale and

make the property bring its value, and that he told Stephens if he did not have the money to pay for the land that he would get the money for him; that soon after the sale and on the 9th of March, 1884, he made Stephens a deed for the land, and on the 12th, three days thereafter, Stephens made him back a deed for the same land. That in this transaction there was no money passed, Stephens paid him nothing and plaintiff paid Stephens nothing.

It was argued here for the plaintiff that this land was not purchased for him by Stephens, but, taking these facts as shown by his own testimony, the Court might well have instructed the jury that it was purchased by the plaintiff through his agent, Stephens.

We have never been called upon to consider a more carelessly managed estate by an administrator, nor a more defective proceeding to sell real estate. We are satisfied from an examination of the records offered in evidence that there never was any summons, petition or complaint, nor order of Court to authorize the plaintiff to sell this land. We are satisfied that the only thing the plaintiff ever did, looking to a sale of the real estate of his intestate, is contained in a statement made in his report of the sale of the personal property in which it is stated that the personal property was insufficient to pay intestate's debts and that he died seized and possessed of this and some other real estate; and "that the widow and heirs are desirous to have the remainder of the real estate sold to make assets to pay the indebtedness of the estate." This is made after stating that the widow claimed the home place as her dower.

This might be treated as a *very* informal complaint, but sufficient to sustain a sale, properly and honestly made, if there had been proper parties made and an order of sale. But none of this was ever done. The heirs at law of Fenner Fuller were never made parties. No summons was ever

issued bringing them into Court and no order of sale was ever made. We are satisfied of this. Therefore, the Court must treat this pretended sale of the plaintiff, at which he in law became the purchaser, as a nullity and as passing no title. If the case ended here, the judgment of the Court below would be affirmed.

But on the 12th day of March, 1884, Marion Stephens makes a deed to the plaintiff conveying this land to him in fee simple, and this deed has been probated and registered. The plaintiff testifies that the defendants rented this property from him and were his tenants, and on the 7th day of April, 1885, they made a contract with him for the purchase of said land; that at that time they executed to him their notes for $150 each and he executed a bond to make them a title on the payment of these notes, they being for the amount of the agreed price they were to pay him for the land. He also alleges and swears that said notes have never been paid, and that he is ready and able to make such title upon the payment of the purchase money.

The deed from Stephens to the plaintiff was color of title, without reference to the want of authority of plaintiff to sell to Stephens. And the possession of the defendants, first as his tenants, and then under a contract to purchase, was the possession of plaintiff. The possession of a vendee, holding under a bond for title, is the possession of the vendor. *Bradsher* v. *Hightower*, 118 N. C., 399. This possession having commenced in the Spring of 1884, and continuing until now, ripened the colorable title from Stephens into a perfect title in the plaintiff, unless there are parties interested in the land who are under disabilities. There seems to have been two of the children of Fenner Fuller who were minors in 1884. But the youngest of them is 26 years old now, having been 13 in 1884.

A purchaser is not bound to take a defective title from his

bargainor; nor is a bargainor bound to have a perfect title at the date of the contract to sell. It is sufficient if the title is perfect at the time it is attempted to be enforced either by the bargainor or the purchaser. *Hobson* v. *Buchanan*, 96 N. C., 444.

Upon this undisputed evidence as to the Stephens deed and the continuous possession of the defendants, it would seem that it would have been proper for the Court to have charged the jury that, if they believed the evidence, the plaintiff was the owner of the land and could make a good title to the same; that the defendants had contracted to purchase the same of him at the price of $300, secured by the notes offered in evidence; that there was a bond for title from plaintiff to defendants. But if there was no bond, the defendants are at the wrong end of the contract to plead or take advantage of the Statute of Frauds. *Taylor* v. *Russell*, 119 N. C., 30.

But, as the case goes back for a new trial, other facts may be developed by the defendants. They may prove that they did not buy or that there have been such transactions between them and the plaintiff as to show that they have not continued to hold said land, as his bargainee.

We think it is time the plaintiff had settled his intestate's estate. And as he reported the sale to the Court that the land brought $330, he is chargeable with this sum and interest thereon from the date of the sale, when Stephens bid it off, to the date of his settlement. *Highsmith* v. *Whitehurst*, 120 N. C., 123. And if the plaintiff does not settle the estate and properly account for this amount, we can see no reason why defendants may not be entitled to the two-fifths of this amount, as a payment or counter claim on their purchase indebtedness, provided they set up this defence. There is error.

New trial.