Belva ANDERSON, Plaintiff and Respondent,

v.

Robert SHELTON, also known as Robert H. Shelton; Williams County, North Dakota, a public corporation, Defendants,

and

Robert Shelton, also known as Robert H. Shelton, Defendant and Appellant.

No. 7767.

Supreme Court of North Dakota.

Sept. 15, 1958.

Dean Winkjer, Williston, for plaintiff and respondent.

Burk & O'Connell, Williston, for defendant and appellant Robert Shelton.

MORRIS, Judge.

The plaintiff brought this action to determine adverse claims to an undivided one-fourth interest in 160 acres of land in Williams County, North Dakota. The defendant Williams County defaulted. The defendant Robert Shelton, also known as Robert H. Shelton, answered by general denial and by alleging adverse possession and payment of taxes for over ten years under the provisions of Section 47–0603, NDRC 1943 as amended. He also counterclaimed alleging a fee simple title in himself and asked that title be quieted in him as against the claims of the plaintiff. The plaintiff replied to the answer and counterclaim denying new matter alleged therein and further alleging that Robert Shelton bases his claim to title upon tax deed proceedings that were defective and void and that title to the property remained in Theodore N. Shelton, who was the father of both the plaintiff and defendant, until his death in 1942 when it passed to his heirs.

The trial court found that the plaintiff is the owner of an undivided one-fourth interest in the property subject to an equitable lien in favor of Robert Shelton for one-fourth of the amount he paid to Williams County for the purchase thereof and for one-fourth of the taxes subsequently paid by him. From a judgment entered in favor of the plaintiff the defendant Robert Shelton appeals.

A patent to this land was issued by the United States to William A. Shelton on July 14, 1908. His estate was probated in the County Court of Williams County and a final decree therein entered on May 18, 1928 and on the same day recorded in the office of the register of deeds of that county decreeing the land to Theodore N. Shelton, son, and Cora Shelton, daughter, in equal shares. There is evidence in the record to the effect that Cora Shelton died many years ago and that in 1913 she was presumed dead because of an extended absence without being heard from and a probate of her estate was started. In the course of the probate proceedings the county court found that Cora Shelton died May 15, 1901. It was also stipulated between the parties to this action that Theodore N. Shelton was the sole survivor of William A. Shelton and it was further stipulated that Theodore N. Shelton was the sole heir at law of his sister Cora Shelton. Thus it appears that Theodore N. Shelton acquired by descent the entire title to the land in question.

On March 1, 1940, a tax deed was issued in the name of the State of North Dakota by the county auditor to Williams County and recorded in the office of the register of deeds on the same day. On May 16, 1941, Robert Shelton made a written application to the Board of County Commissioners of Williams County to purchase the property. On the same day the property was sold by the county to the applicant for $480. The terms were $120 in cash and $120 on January 1 of 1942, 1943 and 1944. The purchaser immediately took possession of the land, on which there are no buildings, and has been in possession since. Theodore N. Shelton died

on February 12, 1942, some nine months after the purchase of the land from the county. On April 5, 1943, Robert Shelton was appointed administrator of the estate of his father Theodore N. Shelton who died intestate. The land which Robert Shelton had purchased from the county was not listed among the assets of the estate. The inventory shows that the estate consisted of a quarter section of land not involved in this litigation, household furniture appraised at $25 and eleven items of farm machinery of little value. On March 21, 1944, Robert Shelton having made the payments provided by his contract, Williams County executed and delivered to him a tax deed for the land which had been deeded to the county on March 1, 1940. On April 22, 1952, the county court entered a final decree of distribution in the Theodore N. Shelton Estate decreeing the same to the heirs as their interest therein then appeared, no reference being made to the land in litigation. This action was commenced by the plaintiff on March 26, 1953. At the time of trial Robert Shelton had not been discharged as administrator because of objections of the plaintiff.

 The first question to be determined is that of the validity of the tax deed to Williams County. Neither the original deed nor the record thereof in the office of the register of deeds is in evidence. An abstract of title was introduced in evidence without objection. Entry No. 5 of this abstract shows that a tax deed was issued to Williams County on March 1, 1940. The terms of the deed are not set forth but it shows that the property was sold at tax sale, bid in by the county and that there was no redemption. It is argued by the plaintiff and the court found that a proper notice of expiration of period of redemption was not served on the record owners of the property as provided by Chapter 235, Session Laws N.D.1939, which was the law in effect at the time the tax deed proceedings were had. It appears that the records of the county auditor of Williams County pertaining to this property are incomplete. The notice of expiration of the period of redemption with proof of service thereof is missing from the files. We have held in certain instances where a part of a county auditor's files is missing that it will be presumed that the auditor performed his official duty in the absence of any proof to the contrary. See Coulter v. Ramberg, 79 N.D. 208, 55 N.W.2d 516; Remmich v. Wagner, 77 N.D. 120, 41 N.W.2d 170. In this case, however, the fragmentary files of the county auditor do show a failure to perform official duty with respect to service of the notice of expiration of the period of redemption.

Chapter 235, Session Laws N.D.1939, requires the county auditor in addition to serving the notice of expiration of the period of redemption by mail on certain specified persons including the record title owner, to publish a notice of the expiration of the period of redemption in a form prescribed by statute which includes the provision that:

"Opposite each description of real estate appears the name of the record title owner thereof as it appears by the records in the office of register of deeds of such county * * *".

It is also provided that:

"It shall be the duty of the register of deeds and clerk of the district court within ten days after request by the county auditor to furnish him with a certified list giving the names, and so far as they appear on the records in the office of the register of deeds and clerk of the district court, the addresses of all persons who appear to be interested as owners, mortgagees, lien holders or otherwise in such real estate which has been sold to the county for taxes as may be specified by the county auditor in making such request."

At the time the tax deed proceedings were had the records in the office of the register of deeds showed that Theodore N. Shelton and Cora Shelton each owned

an undivided one-half interest in the property in question. The exhibits before us show that the county auditor made the request to the register of deeds provided by statute and received the following certification:

"Title Owner Cora Shelton et al. P. O. Address Tioga"

It also appears that on August 1, 1939, there was published in the newspaper, The Williston, North Dakota Daily Herald, a notice of expiration of the period of redemption under the certificate of the county auditor containing a long list of owners and descriptions of real estate. In this list the record title owner of the property in question was designated as "Cora Shelton et al." After Robert Shelton applied to purchase the land from the county, the county auditor on June 5, 1941, mailed a notice to the former owner of the sale required by Section 19, Chapter 286, Session Laws N.D.1941, which was addressed to "Cora Shelton et al. Tioga N. Dak." We think the inference is clear that in the records in the county auditor's office during the tax deed proceedings and at least until the land was sold by the county the name of the original owners appeared only as "Cora Shelton et al." and that the notice of expiration of the period of redemption was given in accordance with that record.

■ The Latin abbreviation "et al." is not sufficient to designate specific parties. It merely indicates that there are other parties not named and where as in this instance the law requires notice to be given to a specific party or parties the abbreviation is insufficient to designate parties not specifically named. Lyman v. Milton, 44 Cal. 630; Fort Worth Lloyds v. Johnson, Tex.Civ.App., 129 S.W.2d 1157. The notice of expiration of the period of redemption did not include the name of Theodore N. Shelton, one of the record owners, and was therefore void. It follows that the tax deed to Williams County issued pursuant to that notice is also void and conveyed no title to Williams County and that the deed from Williams County to Robert Shelton conveyed no title to him.

On May 16, 1941, when Robert Shelton purchased the land from Williams County on contract and entered into immediate possession thereof, Section 5471, C.L.N.D. 1913, was in effect. It provided:

"All titles to real property vested in any person or persons who have been or hereafter may be in actual open adverse and undisputed possession of the land under such title for a period of ten years and shall have paid all taxes and assessments legally levied thereon, shall be and the same are declared good and valid in law, any law to the contrary notwithstanding."

This statute in substantially the same form appears as Section 47–0603, NDRC 1943. The fact that Shelton paid the taxes for over ten years from his purchase and entry into possession is undisputed. Shelton was asked whether he told his father that he was buying the land. He replied:

"Yes, sir, I told him in March that I was going to buy it and he said, 'Go ahead', and then right after I bought it in May I went down and told him.

"Q. And do you have any agreement with your father that you were going to buy this land for him? A. No, nothing was said about that."

He testified that in 1939 he farmed the land "Like working for my dad." The inference is clear that he was not a tenant but was merely working for his father. His father got all of the crop in 1939 and prior years. After Robert Shelton bought the land in 1940 he retained all of the crop. His father took no part of it.

■ The contract by which Robert Shelton purchased the land from Williams County is authorized by statute and is regular on its face. Although the county's title under its tax deed was void the contract which it executed in favor of Shelton

was sufficient to vest in him color of title. Robertson v. Brown, 75 N.D. 109, 25 N.W. 2d 781. Under it he took open, adverse and undisputed possession. The question now is whether that possession continued to be adverse for a period of ten years or whether the adverse character of the possession was destroyed by subsequent events. The first event was the death of Robert's father, Theodore N. Shelton, on February 12, 1942. As a general rule the continuity of adverse possession of real property which began during the owner's lifetime is not interrupted by his death and a statute such as the one here involved continues to run against the owner's heirs. 1 Am.Jur., Adverse Possession, Sec. 125; 2 C.J.S. Adverse Possession § 155.

■ The next event bearing upon the continuity of adverse possession was the issuance by the County Court of Williams County to Robert Shelton of letters of administration of the estate of Theodore N. Shelton on April 5, 1943, authorizing and empowering him:

> "to take and have possession of all the real and personal estate of said deceased, and to receive the rents, issues and profits thereof, until said estate shall have been settled, or until delivered over by order of said County Court to your successor in trust, or to the heirs of said deceased."

While title to the property of the deceased passed to the heirs upon his death that title was subject to the administration of the estate in county court. Upon the appointment of the administrator his right to the possession of the real estate belonging to the estate became superior to that of the heirs. Belakjon v. Hilstad, 76 N.D. 298, 35 N.W.2d 637; Honsinger v. Stewart, 34 N.D. 513, 159 N.W. 12; Blakemore and Kedney v. Roberts, 12 N.D. 394, 96 N.W. 1029; Section 30–2401, NDRC 1943.

■ Neither Williams County nor Robert Shelton acquired title to the land in question through the void tax deed proceedings or the transfer of the county's purported title to Shelton. The title remained in Theodore N. Shelton until his death the same as if the tax deed proceedings had not been taken. Westland v. Stalnecker, 76 N.D. 291, 35 N.W.2d 567; Flath v. Elefson, 73 N.D. 746, 19 N.W.2d 571.

■ We conclude from this record that at the time Robert Shelton entered into the contract of purchase from Williams County he did so in good faith and without knowledge of any infirmity in the county's title. He also acted in good faith with respect to his father who was the original owner of the land and who was aware of his son's transaction with the county. Robert Shelton's entry into possession was in good faith under an ostensible title and was adverse to the true title which still remained in his father. At that time none of the heirs had a present interest in the land.

The evidence is in sharp conflict on one point. Robert Shelton testified that he told the plaintiff in Fargo in 1942 that he had bought the land. This she flatly denied. She testified that she did not learn that her brother had bought the land from the county until about 1950. This conflict is of little importance. Robert Shelton was under no legal obligation to advise his sister of his purchase from the county. His failure to do so would not amount to a breach of duty on his part.

■ At the time Robert Shelton was appointed administrator of his father's estate he was in adverse possession of the land under color of title of a contract of purchase with Williams County. The county having obtained no title through its void tax deed proceedings the true title had passed on the death of Theodore N. Shelton to his four children in equal shares subject to the administration of the estate. As co-owners and tenants in common each heir had a right to enter upon and take possession of the land in question subject to the right of possession of the administrator ap-

pointed by the court and subject to the equal rights of the other co-owners. Stevahn v. Meidinger, 79 N.D. 323, 57 N.W.2d 1.

■ It is argued that when Robert Shelton qualified as administrator of his father's estate he accepted a position of trust with respect to the property of the estate and his coheirs which had the effect of terminating or at least suspending his adverse possession of the land in question which was then legally a part of the estate.

Robert Shelton on the other hand argues that although he was appointed administrator he never took possession of the land in his official capacity, did not consider it a part of the estate, did not list or inventory it as an asset of the estate, but retained possession in his personal capacity as indicated by the fact that he paid the taxes personally, retained all of the proceeds of the land and never dealt with it in any manner other than as his own property. He also argues that his acceptance of the administration of the estate did not in any manner hamper or prevent his coheirs from asserting the title which vested in them on the death of their father under the laws of descent.

The right of an executor or administrator to hold possession of land adversely to a deceased owner's heirs or devisees and whether such an officer's official position will preclude a hostile holding in his individual capacity is discussed generally in 1 Am.Jur., Adverse Possession, Sec. 124 and 2 C.J.S. Adverse Possession § 91. The majority of cases indicates that under certain conditions the personal representative of a deceased may enter and hold possession of decedent's land adversely to heirs or beneficiaries. In Ashford v. Ashford, 136 Ala. 631, 34 So. 10, 11, 96 Am.St.Rep. 82, which appears to be a leading case on the subject, it is said:

"The inquiry in all such cases is not whether the administrator has a right by virtue of his office to the possession, but whether in point of fact he assumed such right and claimed to hold under it.

The validity vel non of his claim is immaterial. Its hostility vel non to the heirs is the important and controlling issue. Its quality as being, or not, in denial of the title of the heirs, and not its quality as being, or not, rightful and authorized, determines whether the possession by him under it is adverse to them. That such a claim is not hostile to, but in recognition of, the heir's title, and that possession taken and held under it is not adverse to them, seems altogether clear. We, therefore, deem it unnecessary to determine in this case whether A. E. Ashford had the right, as administrator, to take and hold possession of the land sued for. That he did take possession in 1866 immediately after he was appointed administrator, is proved beyond controversy. That he has been in possession from that time to the trial of this cause, continuously and uninterruptedly, there is at least a tendency of the evidence to show. The jury having a right to find in line with this tendency, a further inquiry of importance to be submitted to them was whether he entered upon and took possession of the premises and has continued to hold them as administrator, claiming in that capacity, whether he had any such right or not as administrator. If they found that his claim was based only upon his assumed right as administrator, and that his possession under that claim has continued throughout the years that have passed, that possession could not be adverse to the heirs of his intestate who prosecute this suit, and they should have found for the plaintiffs. If he at any time repudiated this capacity in which he took possession, and afterward claimed to hold in his individual right, such repudiation would not operate to give an adverse character to his possession unless and until a knowledge of such repudiation was brought home to the heirs—not mere notice, but knowledge."

See also Satariano v. Galletto, 66 Cal.App. 2d 813, 153 P.2d 201; McNeill v. Fuller, 121 N.C. 207, 28 S.E. 299; Hysmith v. Patton, 72 Ark. 296, 80 S.W. 151; Mason v. Odum, 210 Ill. 471, 71 N.E. 386, 102 Am.St.Rep. 180; Sojourner v. Fourney, 35 La.Ann. 918.

This case differs from those above cited in that the possession of Robert Shelton became adverse prior to the death of the owner and almost two years prior to his appointment as administrator. The only case we have found that considers a problem similar to that before us is Kalakaua v. Keaweamahi, 4 Haw. 571. Kaunuohua was the original owner of the real estate in litigation. She died in 1849 without issue leaving her husband Moehonua. The defendants were the heirs of Moehonua. The plaintiffs claimed title through a sister of Kaunuohua.

"Under the agreed facts, it must be assumed after the marriage of W. L. Moehonua to Kaunuohua in 1848, that by force of the Statute of 1846 he took and held possession of the land claimed as her husband, and that he held possession thereof at the time of her (his) death in 1878, and that thereafter his heirs held and now hold the possession thereof. If this possession after the death of Kaunuohua was adverse to the plaintiffs, their right of entry was long since tolled, and they cannot recover."

Moehonua was appointed administrator of his deceased wife's estate and was never discharged. He was in possession at the time of his wife's death and at the time he applied to be made administrator. In determining that Moehonua did not by becoming administrator of his deceased wife's estate abandon or waive his adverse possession the court said:

"It is, however, evident that when Moehonua accepted the administration he was in possession, openly claiming to be heir of Kaunuohua, and to be entitled to the property in dispute, as owner, against all the world. This claim, and the petition and proofs then made, characterize and qualify his acceptance of letters of administration, and show that he was not trustee for the plaintiffs or their grantor, and that he never acknowledged the existence of any such relation.

"The probate proceedings are matter of record. The sister of Kaunuohua, who was then living in Honolulu, and under no disability, must be presumed to have had notice of those proceedings, and of Moehonua's claim to the title. After a trustee denies a trust his possession is deemed adverse.

"See Washburn on Real Property, Volume 2, p. 493; Perry on Trusts, Volume 2, Section 864. Moehonua not only denied the trust—he never admitted it; and it may be properly inferred that he took the administration because he believed it would aid his claim of title as sole heir, and it was .his assertion of it in Court. He expressly denied the title of all other heirs. An administration so taken cannot be construed into admission of other's rights.

"A possession adversely commenced is presumed to continue adverse, so long as maintained. Bogardus v. Trinity Church, 4 Sand[f]. Ch. pp. 633, 733; 1 Greenleaf's Ev., Section 41.

"When the administration was granted the possession of Moehonua was adverse. This condition continued, unless taking administration was abandonment of the character of the possession; and we think we have shown that it was not."

Lest it be suggested that it was the duty of Robert Shelton as administrator to inventory the land in question as property of the estate and take the steps necessary to protect the title, a duty antagonistic to his acquisition of title by adverse

possession, we would point out that Section 30–1501, NDRC 1943, provides that:

"An executor or administrator of an estate, within thirty days after his appointment, must make and return to the county court a true inventory and appraisement of all the real and personal property of the decedent which has come to his knowledge."

We think the inference is clear that the administrator was not aware of the failure of Williams County to obtain a valid title through its tax deed proceedings. He was unaware that the decedent had any interest in or title to the land and consequently did not breach his official duty in failing to include it in the inventory or in any of the probate proceedings including the decree of distribution. Neither can he be charged with breach of duty for failure to pay the taxes upon property which he did not know or have reasonable cause to believe was an asset of the estate. We would further point out that Section 30–1820, NDRC 1943, provides:

"If satisfied that it will be for the benefit of the estate, the county court by order may authorize or direct the executor or administrator on the application of any person interested to pay taxes and demands maturing upon any debt secured by a mortgage, pledge, or other lien existing on the property of the decedent or upon a contract for the purchase of real property whenever there are sufficient funds properly applicable thereto, although such demand has not been presented and allowed."

The plaintiff could have availed herself of this remedy had she known the situation with respect to the title of the property. Her ignorance in this respect did not result from any dereliction on the part of Robert Shelton. As we review the entire record we reach the conclusion that it does not show that Robert Shelton acted in bad faith or violated his duty as administrator with respect to the land in question in such a manner as to terminate his adverse possession.

■ The plaintiff also asserts that upon the death of Theodore N. Shelton, intestate, his four children as his heirs became tenants in common of the real estate that he owned at the time of his decease. Ellison v. Strandback, N.D., 62 N.W.2d 95; Stevahn v. Meidinger, 79 N.D. 323, 57 N.W.2d 1. The plaintiff seeks to invoke the rule stated in Ellison v. Strandback, supra, that [62 N.W.2d 99]:

"Before possession, of one cotenant can become adverse, the cotenant in possession, must give notice to the other cotenants, either directly or by a course of conduct in direct hostility to their claims so as to show an ouster of the rights of such cotenants. Stoll v. Gottbreht, 45 N.D. 158, 176 N.W. 932."

In attempting to apply that rule to the present case the plaintiff overlooks the fact that at the time of the adverse entry the heirs of Theodore N. Shelton had no interest in or title to the property. Theodore N. Shelton was the sole owner and as to him the adverse entry was complete. The fact that the plaintiff thereafter by inheritance acquired a one-fourth interest in the title to the property being held in adverse possession by her brother does not require that he perform some other and further act to oust her from possession of property of which he had total adverse possession. Neither is his claim of adverse possession weakened by the fact that he later inherited a full and complete title to a one-fourth interest in the property. He still remained in adverse possession of the whole as against the claims of the other three coheirs and cotenants. Jones v. Thomas, 124 Mo. 586, 28 S.W. 76.

■ Our determination here is analogous to the general rule that where a person in adverse possession claiming the whole of the land purchases an outstanding undivided interest he does not thereby destroy

the adverse character of his possession as to other outstanding interests which he does not purchase the owners of which are tenants in common with his vendor nor does his purchase interrupt the continuity of his adverse possession as regards the owners of the other undivided interests. Authorities supporting this rule may be found in the following annotations: 125 A.L.R. p. 832; 24 Ann.Cas. p. 956.

We reach the conclusion that the adverse possession of Robert Shelton was not interrupted by the death of his father, his appointment as administrator of his father's estate or the acquisition of title to a one-fourth interest in the real estate by each of the heirs of Theodore N. Shelton as coheirs and cotenants.

Adverse possession and payment of taxes for ten years in compliance with the provisions of Section 47–0603, NDRC 1943, has vested title in Robert Shelton. He is therefore entitled to a judgment quieting title as prayed for in his counterclaim. The judgment appealed from is reversed.

GRIMSON, C. J., and SATHRE, JOHNSON and BURKE, JJ., concur.