**VAN RADEN HOMES, INC.,
a corporation, Plaintiff
and Appellee,**

v.

**DAKOTA VIEW ESTATES, a partnership, Hugo Olson, Kenneth V. Nordling, and other persons unknown claiming an estate or interest in, or lien or encumbrance on a property described in the Complaint, Defendants.**

**Benny E. Peterson, Curtis Mitskog, Robert Hastings, Delph Kundert, American Bank and Trust Company, as trustee of Byron Ogren, deceased, Defendants and Appellants.**

**Civil No. 950131.**

Supreme Court of North Dakota.

April 25, 1996.

Rehearing Denied May 14, 1996.

Wold Johnson, P.C., Fargo, for plaintiff and appellee; argued by J. Philip Johnson.

Garaas Law Firm, Fargo, for defendants and appellants; argued by David A. Garaas.

MESCHKE, Justice.

A group of former owners ("Peterson") appeal from a judgment quieting title to six lots in Van Raden Homes, Inc., who purchased them from Cass County after tax sales. We agree with the trial court that Peterson failed to prove the tax sales were jurisdictionally defective, and we affirm.

Peterson challenges the validity of the tax title to six lots in the City of Fargo purchased by Van Raden from Cass County in November 1992. The county acquired the lots by sales for nonpayment of taxes. To aid comprehension, we briefly summarize the intricate statutory scheme regulating tax sales.

When taxes are levied, each county auditor prepares a "tax list" detailing the ownership and amount of levied taxes for each parcel of property in the county. *See* NDCC 57–20–02

& 57–20–03. The auditor gives the tax list to the county treasurer, *see* NDCC 57–20–06, who mails tax statements to the property owners at their last known address. *See* NDCC 57–20–07.1. If the taxes are not paid, the treasurer mails each owner a notice that their property will be sold at the annual tax sale in December if they do not pay the delinquent taxes. *See* NDCC 57–24–01; *see also* NDCC 57–24–02 (auditor to post delinquent tax list) & 57–24–07 (auditor to publish notice of tax sale). If the taxes remain unpaid, the auditor can sell the property at a public auction on the second Tuesday in December for a bid equal to the total amount of taxes, penalties, and sale costs. *See* NDCC 57–24–12. If there is not a private bidder at the sale, the treasurer bids for the county and, under NDCC 57–24–14, the county acquires rights to the property.

After the tax sale, any party with a property interest at the time of the tax sale can redeem the property from the county by paying the amount the property sold for, plus interest, before the expiration of the redemption period. *See* NDCC 57–26–02 & 57–26–03(2). When the county acquires the property at the tax sale, NDCC ch. 57–28 governs the rights of the county when the property is not redeemed. If the property remains unredeemed three years after the county acquires it at the tax sale, the auditor notifies interested parties by June 1 that the redemption period will expire on October 1, *see* NDCC 57–28–01 & 57–28–02, and publishes notice of the expiration of the redemption period by August 1. *See* NDCC 57–28–06. If the property is still unredeemed by the expiration of the redemption period on October 1, NDCC 57–28–09 authorizes the auditor to issue a tax deed to the county.

The 1987–1991 real estate taxes for these six lots were not paid. On December 13, 1988, the Cass County auditor offered the lots for sale at the annual auction for nonpayment of the 1987 taxes. There were no private bids, and Cass County acquired the lots and received tax sale certificates for each. *See* NDCC 57–24–19 & 57–24–23. In 1992, the county served and published notice that the expiration period would expire on October 1, 1992. The lots were not re-

deemed, and the auditor deeded the lots to Cass County on November 17, 1992. Later that same day, the county deeded the lots to Van Raden.

On February 19, 1993, Van Raden sued the former owners to quiet title on the lots. The trial court dismissed the action, concluding the county's failure to publish the notice of the expiration of the redemption period three times was a jurisdictional defect that voided the county's tax deeds. Van Raden appealed, and we reversed and remanded. *See Van Raden Homes, Inc. v. Dakota View Estates (Van Raden I )*, 520 N.W.2d 866 (N.D.1994) (holding only one publication of notice of expiration of redemption period was required when county purchased lots at tax sale). After trial on remand, the trial court quieted title in Van Raden. Peterson appeals.

■ For a valid tax sale, "there must be strict compliance with mandatory and jurisdictional requirements of the relevant statutes, and those statutes will be strictly construed in favor of the owners of the property." *Fibelstad v. Grant County*, 474 N.W.2d 54, 61–62 (N.D.1991); *see also Van Raden I*, 520 N.W.2d at 868. However, a failure to redeem property sold at a tax sale before the expiration of the redemption period waives "all errors, irregularities, or omissions which do not affect the substantial rights of the parties, *except jurisdictional defects.*" NDCC 57–28–08(3) (emphasis added). The "concept of a 'jurisdictional defect' can differ depending on the context of the challenge to the tax sale proceedings." *Fibelstad*, 474 N.W.2d at 59. Therefore, when a tax sale is not attacked until after the expiration of the redemption period, the court must determine if the asserted defect is "jurisdictional." If it is not, the failure to redeem before the expiration of the redemption period waives the asserted defect.

Peterson argues that three "jurisdictional" defects in this tax sale voided Van Raden's tax title: (1) improper notice of the 1988 tax sale; (2) improper service of notice of the expiration of the redemption period; and (3) improper publication of notice of the expiration of the redemption period. Because we agree with the trial court that Peterson failed to meet the burden of proof for the first two

asserted jurisdictional defects, and because we find adequate publication notice in this case, we affirm.

1. *Notice of Tax Sale.*

■ Peterson asserts the notice of the tax sale "was not made within the proper time period, was not sent to each owner, and ... only warned of the taxes being sold and not the lots." Peterson argues that the failure to mail proper notice of the December 1988 tax sale to each owner of the lots is a jurisdictional defect that voids Van Raden's tax title. We agree that the failure to give a required notice of a tax sale is a jurisdictional defect. *Fibelstad,* 474 N.W.2d at 61. However, we agree with the trial court that Peterson failed to prove that the county did not give a required notice of the tax sale.

■ While conclusions of law are fully reviewable on appeal, we will only set aside a trial court's findings of fact if they are clearly erroneous. *Gajewski v. Taylor,* 536 N.W.2d 360, 362 (N.D.1995). As we explained in *Mahoney v. Mahoney,* 538 N.W.2d 189, 192 (N.D.1995), a "finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made."

■ Here, on notice of the 1988 tax sale, the trial court found:

At trial Benny Peterson presented his notice of the 1988 tax sale. The notice was addressed to "Peterson, Benny E. and American Bank and Trust Company, et. al., 737 Center Ave., Moorhead". The notice is not dated. There is no proof that the notice was not given to the other record holders....

The trial court then concluded:

The answering [Peterson] Defendants contend that the notice of the 1988 tax sale was defective because it was not sent to all owners of the property. The evidence presented failed to establish that notice of the tax sale was not sent to all record owners. It is the [Peterson] Defendants' burden to prove that notice of such sale as required by law was not given, and the [Peterson]

Defendants have not sustained that burden.

Peterson argues that, because Van Raden was "claiming under a tax title," Van Raden "had the burden of proving the regularity of the tax proceedings," and that the "trial court erroneously believed that [Peterson] had the burden of proof to show that notice as required by law had not been given." We disagree.

■ "A [tax] deed issued [to the county] under this section is prima facie evidence of the truth and regularity of all facts and proceedings before the execution of the deed." NDCC 57–28–09. "Where the statute makes a tax deed prima facie evidence of the regularity of all the proceedings leading up to the execution of the deed, the burden is upon the person attacking the tax title to prove that the tax title is jurisdictionally defective." *Peterson v. Reishus,* 66 N.D. 436, 266 N.W. 417, Syllabus 2 (1936); *see also Brink v. Curless,* 209 N.W.2d 758, 765 (N.D. 1973), *overruled on other grounds by City of Bismarck v. Muhlhauser,* 234 N.W.2d 1, 5 (N.D.1975). Therefore, Peterson had the burden to prove that Van Raden's tax title was jurisdictionally defective.

■ Specifically, a tax sale certificate is "prima facie evidence that all the requirements of law with respect to the sale have been complied with...." NDCC 57–24–29; *see Fibelstad,* 474 N.W.2d at 58 ("The tax sale certificate is given a significant curative effect."). Section 57–24–29 also confines the delinquent taxpayer to four potential grounds for attacking the tax sale, including inadequate notice of the sale: "No sale may be set aside nor held invalid, unless the party objecting to the same *proves* that ... [n]otice of such sale as required by law was not given." NDCC 57–24–29 (emphasis added). This statute clearly places the burden upon the delinquent taxpayer to prove that all owners did not receive proper notice of the impending tax sale. *See Fish v. France,* 71 N.D. 499, 508, 2 N.W.2d 537, 542 (1942) ("The burden ... is upon the plaintiffs to show that the required notice was not given."); *see also Remmich v. Wagner,* 77 N.D. 120, 126, 41 N.W.2d 170, 173 (1950) ("[P]rima

facie evidence of the certificate must have been overcome before the sale can be set aside."). *Compare* NDCC 57–24–08 (requiring proof of publication of notice of tax sale by affidavit); NDCC 57–27–03 (requiring proof of service of notice of expiration of redemption period). The trial court properly concluded that Peterson had the burden to prove that not all owners received proper notice of the tax sale.

The trial court specifically found that there "is no proof that the notice was not given to the other record holders." This finding is not clearly erroneous; therefore, Peterson failed to meet his burden of proof.

 Peterson argues that the tax sale notice was jurisdictionally defective because it was mailed in August, rather than between November 1 and 15, and because it stated that the "taxes," rather than the lots, would be sold in December. NDCC 57–24–01 states:

> Between the first day and fifteenth day of November in each year, the county treasurer shall mail to each owner of any lot or tract of land subject to sale at the delinquent tax sale provided for in this chapter, a notice giving the legal description of such lot or tract to be offered for sale, and stating that such lot or tract will be sold for delinquent taxes unless such delinquent tax, with penalty, interest, and cost of advertising, is paid prior to the sale on the second Tuesday in December following.

On these two asserted defects, the trial court found:

> The 1988 tax sale notice included the legal description of the property, taxes, special assessments, and general and special penalties on the property. It indicated: "Statement of unpaid real estate taxes for 1987. The taxes will be subject to sale according to law if not paid by the second Tuesday in December."

> Peterson claims that the notice he received on the 1988 sale was mailed in August. The tax sale notices sent to Peterson are not dated. The Deputy Treasurer testified that the treasurer's office at that time did not send tax sale notices between November 1 and November 15, and they had done

so until 1991. There is no evidence that the owners of the property were prejudiced in any way by the date of mailing.

The trial court then concluded:

> The [Peterson] Defendants contend that the mailing of the notice of the 1988 tax sale was inadequate because it was mailed in August rather than between November 1 and November 15. The Defendants have not shown in any way how this earlier notice affected the rights of any parties with an interest in the subject property.

> The [Peterson] Defendants contend that the wording of the 1988 tax sale notice was defective because it indicated that the taxes rather than the property would be sold. The notice given was sufficient to put the property owners on notice of the impending sale.

 Because it "is the *giving* of the notice of tax sale that is jurisdictional to a valid tax sale," a "mere irregularity" in the notice will "not be sufficient to set aside the tax sale unless [it becomes] an essential part of proving that the notice of the tax sale was not given." *Remmich,* 41 N.W.2d at 173 (emphasis added); *see also K & L Homes, Inc. v. Burleigh County,* 478 N.W.2d 376, 378–79 (N.D.1991). As we explained in *Remmich* at 173, if the irregularity in the tax sale notice is not an "essential part" of the giving of the notice, it is cured by the issuance of the tax sale certificate.

Here, the trial court found that the early mailing of the tax sale notices was not prejudicial, and that the form of the notices was not substantially misleading. These findings were not clearly erroneous. Therefore, we conclude that the timing and form of this tax sale notice were mere "irregularities" that were cured by the issuance of the tax sale certificates.

2. *Service of Notice of Expiration of Redemption Period.*

 Peterson argues that the county's failure to serve the notice of the expiration of the redemption period on all three trustees for the Byron C. Ogren Trust (Trust), rather than on just the Bank trustee, was a jurisdic-

tional defect voiding Van Raden's title. We disagree.

"Service of the notice of the expiration of the period of redemption in the form, substance and kind prescribed by statute is jurisdictional." *Mund v. Rambough,* 432 N.W.2d 50, 53 (N.D.1988). NDCC 57–27–02, made applicable by reference in NDCC 57–28–04 to tax sales where the county acquires the property, directs the procedure for serving notice of the expiration of the redemption period upon owners, mortgagees, lienholders, and other interested persons. Upon request, the register of deeds and clerk of the district court must "furnish the county auditor with a certified list giving the names and addresses of all persons who appear to be interested as owners, mortgagees, lienholders, or otherwise in the property...." NDCC 57–27–02(3). When identifying owners and other interested persons for service of the notice, these county authorities can rely on their own records; they do not have to ascertain who the actual owners and interested persons are. *See Hefty v. Aldrich,* 220 N.W.2d 840, 845 (N.D.1974); *see also Griffeth v. Cass County,* 244 N.W.2d 301, 303–05 (N.D.1976). Thus, the auditor is only required to serve the notice of the expiration of the redemption period on those persons retaining a recorded interest in the property at the time the notices are sent.

These six lots were platted as part of "Dakota View Estates" in 1986. Except for the tax deeds to Cass County and the county deeds to Van Raden, the lots had not been transferred of record since the plat. Before the 1986 plat of Dakota View Estates, these chains of title were complex, convoluted, and not easily followed, but Peterson did not do anything to explain to the trial court the relevance of any of the pre-plat conveyances. Nor did he do so here.

All six owners, in undivided percentages, who joined in the plat, including American Bank and Trust Company as the lone named trustee for the Trust, were factually determined by the trial court to be the "apparent record title owners." The trial court also found that all six received mailed notice of expiration of the redemption period. We do not believe that the existence of other trustees for the Trust, who did not join in the plat, justifies our second-guessing the trial court's unchallenged finding that identified the six "apparent record title owners" for notice of the expiration of the redemption period.

Nothing in this record tells us how Peterson assisted the trial court in identifying the relevant chains of title leading up to the plat. No title opinion was offered, and no title examiner testified. Only an abstract with over 175 entries was admitted into evidence, and it was not accompanied by any brief, description, or explanation of the chains of title shown in it. Peterson did not try to explain to the trial court why only the Bank trustee was one of the six plattors, or why the other two claimed trustees did not execute the plat of Dakota View Estates.

Neither the trial judge nor supreme court judges should have to examine the entire record title to assess the relevance of a particular entry to determine record ownership for jurisdictional purposes in tax sale proceedings. As we noted earlier, a tax deed issued to the county "is prima facie evidence of the truth and regularity of all facts and proceedings before the execution of the deed," NDCC 57–28–09, and the "burden is upon the person attacking the tax title to prove that the tax title is jurisdictionally defective." *Peterson,* 266 N.W. at Syllabus 2; *see also Brink,* 209 N.W.2d at 765, 72 AmJur2d *State and Local Taxation* § 984 (1974). Thus, these former owners and their successors, who assert jurisdictional defects in the tax title proceedings, must prove that all three trustees retained record title to the property at the time notices were given. Here, the trial court concluded that Peterson did not satisfactorily prove all three trustees retained record title, and the abstract reasonably supports that determination.

Peterson asserts, without any connecting explanation, that the interest of the two "missing" trustees is evidenced by a personal representatives' deed of distribution, recorded on June 11, 1984, that transferred an undivided ten percent interest in the original metes and bounds description from the Byron Ogren estate to three named trustees of

the Trust. That is true, but it is only an isolated fragment in the title record preceding the platting by the six "apparent record title owners," including the Bank as a singular trustee, grantee, and plattor. It is unclear how Peterson explained that record fragment to the trial court, if at all, for a relevant connection to the title. Our own effort at examination of the abstract leads us to conclude it is not a record entry that remained relevant to apparent record title to the lots for purposes of tax title notices.

On October 1, 1974, Byron Ogren first received an undivided ten percent interest in a complex and lengthy metes and bounds description, including the area eventually platted as Dakota View Estates. (See abstract entry 123). After Byron Ogren died, the three personal representatives of his estate distributed this undivided interest to themselves as trustees of the Trust by a deed, dated December 16, 1980, but not recorded until June 11, 1984. (See abstract entry 145). By a warranty deed, dated April 2, 1984, and recorded on June 7, 1984, the three trustees conveyed the undivided interest to a 6.75 acre piece of the tract to Gary Hegenes and David C. McGuire. (See abstract entry 133). These Ogren-related recordings in 1984 coincide with a flurry of other and more important title transactions in the second quarter of 1984 that transferred other interests in the metes and bounds description to Hegenes and McGuire.

Hegenes and McGuire assembled many titles to the metes and bounds tract in themselves, including acquisition of earlier interests held by others of the six eventual "apparent record title owners." (See abstract entries 133, 134, 135, 136, 137, 140, 142, and 149). Abstract entry 149 is particularly important.

At entry 149, after a judgment of partition, a Referee's Deed, dated and recorded on July 13, 1984, conveyed the entire tract to McGuire and Hegenes. That Referee's Deed by the Cass County Sheriff declared it is "subject to such interest as the said McGuire and Hegenes may have conveyed to Olson,

et. al., subsequent to 5:00 p.m., May 15, 1984." The abstract does not name all of the parties to the partition action, but the Referee's Deed inferentially demonstrates, under NDCC 32–16–05, that this partition action involved all persons with individual interests in the metes and bounds tract. For a partition action and judgment, NDCC 32–16–05 requires joinder of "all the joint tenants and tenants in common and all persons having an interest in … the property or upon any particular portion thereof. . . ."

The collected title through the Referee's Deed was plainly a new chain of title that designated the Bank as sole trustee with legal title to the Trust's undivided interest in the property. As referenced in the "subject to" clause in the Referee's Deed, Hegenes and McGuire had in fact given a prior warranty deed for all of the tract, excepting the 6.75 acres, to the six "apparent record title owners" in varying undivided percentages, designating a 14.29% interest for the Trust. This "subject to" deed was dated May 18, 1984, and recorded on June 13, 1984. (See abstract entry 148). Shortly after this deed to the six owners who platted Dakota View Estates, Hegenes and McGuire received a warranty deed back from them, including the Bank as lone trustee holding legal title, to three small parcels, 0.10 acres, 0.07 acres, and 0.07 acres, on July 31, 1984, recorded September 25, 1984. (See abstract entry 156). This apparent adjustment of boundaries also confirms the new and separate chain of title for the six "apparent record title owners."

After this exchange, the six "apparent record title owners" obtained a quitclaim deed in 1985 to themselves, in the same undivided percentages for the entire metes and bounds acreage, from four prior record owners from the 1967–1973 era. (See abstract entry 163). Then, the six "apparent record title owners" (with the Bank still the only trustee holding legal title in this title chain) platted Dakota View Estates on March 10, 1986. The plattors made no record transfers or conveyances of any of these six lots after the plat and before the tax sale.[1]

---

1. On June 21, 1990, the Bank, as lone trustee holding legal title, deeded the Trust's interest in

the lots to Byron Ogren's heirs, Wendy Madigan, a younger Byron Ogren, and Anita Smith. Since

From the abstract and evidence, with virtually no explanation of the prior record title from Peterson, the trial court found:

> The apparent record title owners of the property prior to the tax sale were Robert Hastings, Benny E. Peterson, Curtis Mitskog, Delph Kundert, Hugo V. Olson, and American Bank and Trust Company, as trustee of Byron Ogren, deceased.

None of Peterson's arguments on this appeal directly attack this finding as clearly erroneous.

Without clarifying or explaining the effect of the isolated entry in the abstract that he relies on, an entry that is disconnected from the immediate chain of title preceding the plat, Peterson simply states:

> The Notice of the Expiration of the Period of Redemption was not mailed to the other trustees (Madigan and Irene Ogren) of the Byron Ogren Trust and did not reflect the American Bank and Trust Company's status as trustee of the Byron Ogren Trust.

A single paragraph of Peterson's brief illustrates his incomplete and unexplained argument:

> It is submitted that all three trustees of the Byron Ogren Trust have an interest in the property that required notice to be mailed to each of them. Co-trustees hold title to land as joint tenants. N.D.C.C. §§ 57–28–04 and 57–27–02, paragraphs 2 and 4, require mailed notice to all owners and persons entitled to the possession of the property. There should be no question that trustee Madigan should have been mailed notice as an owner of real property and that he was not mailed any notice.

In our opinion, this is an inadequate explanation of an isolated record entry in the record title to overturn the trial court's finding that identified the six "apparent record title owners."

There are many reasons why one of several trustees would act alone. One such reason is that the trust instrument often authorizes one of several trustees to act for a particular purpose. *See* III William F. Fratcher, *Scott*

*on Trusts* § 194 (1989) (text with citations in footnotes 18–20 and 23–24). Here, the trust instrument does not appear in the abstract, and Peterson did not place it in evidence elsewhere in this record. Without any explanation or evidence from Peterson about the relationship among the three trustees for the Trust, that demonstrates one trustee could not act alone, we decline to reassess the abstract and record title to identify apparent · record title owners other than those identified by the trial court. As a reviewing court, we should not have to guess at whether the other two trustees retained record title after the partition action, judgment, and sheriff's deed.

"When title to real estate is taken in the name of a trustee, it shall be presumed that such trustee has the power to sell, convey, and encumber such real estate unless the deed of conveyance to the trustee specifically restricts such power." NDCC 59–03–03.1; *see also* North Dakota Title Standards 1988, Standard 11–23. Since the effective set of deeds in the chain of title leading up to the plat recognized the undivided interest in the Bank as the only trustee holding legal title to the property, and since only that trustee joined in the plat for the lots later sold for nonpayment of taxes, we will not second-guess the trial court for only identifying that named, sole trustee holding legal title as co-owner among the six "apparent record title owners" for purposes of notice of expiration of the redemption period.

In *Axt v. Bank of America,* 72 N.D. 600, 10 N.W.2d 430 (1943), the former owners sought dismissal of an appeal of a quiet title action by challenging the sufficiency and legality of the notice of expiration of the period of redemption and the service thereof on necessary parties. This court noted: "The plaintiff introduced her tax deed in evidence. It is regular on its face and therefore is prima facie evidence of the regularity of the proceedings that resulted in its issuance, including the service of the notice of expiration of redemption." *Id.* 10 N.W.2d at 431. In *Strom v. Giske,* 68 N.W.2d 838, 848 (N.D.

---

this deed was not recordable because taxes were delinquent, it does not affect the record title

analysis in this case for tax sale proceedings.

1954) (emphasis added), this court stated in denying a petition for rehearing: "It follows therefore that such prima facie proof may be overcome by *clear evidence* that the notice of expiration of period of redemption had not been served in the manner and form required by statute." Peterson's evidence in this case about the other trustees' interests is far from "clear."

The trial court found:

The notice of expiration of the period of redemption for Lot 1, was served by registered mail upon American Bank and Trust Company, as trustee of the Byron Ogren trust, Mitskog, Olson, Peterson, Kundert, Hastings and Nordling. The notice was not served upon Madigan, Smith, [the younger Byron] Ogren or the other two trustees of the Byron Ogren trust. Notice of expiration of the period of redemption for Lots 2, 4, 5, 6, and 7, was served by registered mail upon American Bank and Trust Company, Mitskog, Olson, Peterson, Kundert, Hastings, Nordling, Madigan, Smith and [the younger Byron] Ogren. The notice was not served upon the other two trustees of the Byron Ogren trust, and did not reflect American Bank and Trust Company's status as trustee. A representative of American Bank and Trust Company testified that the notices received did not result in any confusion and the bank had a complete understanding of its role as trustee and the nature of the tax proceedings.

The trial court concluded:

The answering [Peterson] Defendants assert that the notice of expiration of the redemption period was defective as to Lots 2, 4, 5, 6 and 7, because the address to which it was sent did not reflect American Bank and Trust Company's status as trustee. This fact did not have any actual effect on the notice received by the bank, or its understanding of the effect of the notice.

The answering [Peterson] Defendants assert that the notice of expiration of the

period of redemption was defective because it was not sent to Madigan, Smith or [the younger Byron] Ogren, or the other trustees of the Byron Ogren trust. Notice to the trustees was sufficient. The county auditor had no record of the interest of these individuals. The auditor does not have an affirmative duty to search the tax receipt records for additional individuals claiming an interest in the property. [The younger] Byron Ogren's interest was also not on record, and there was not an undelivered notice that would have triggered a duty to search the records for a secondary address.

These findings are not clearly erroneous and the conclusions are in accordance with the law.

3. *Publication of Notice of Expiration of Redemption.*

■ Peterson argues that the publication of the notice of the expiration of the time for redemption was jurisdictionally defective because it only listed "Benny E. Peterson" as owner of the lots. Under the facts of this case, we disagree that the omission rendered the published notice jurisdictionally defective.

The principal method for notice of the expiration of the time for redemption to record title owners is by registered mail. *See* NDCC 57–28–04 & 57–27–02(2).[2] "Where service is made at the actual residence or place of employment of the owner, and the notice is actually received, it is a sufficient service of the notice of expiration of the period of redemption." *Brown v. Otesa,* 80 N.W.2d 92, 99 (N.D.1956); *see also Mund,* 432 N.W.2d at 54. To ensure that such service was made, NDCC 57–27–02(6) requires the auditor to "make proof of service by mail," including the return receipts from the served parties.

In addition to the principal method of service by registered mail, however, the county is also required to publish the notice of the expiration of the redemption period:

---

**2.** Effective August 1, 1995, service of the notice of the expiration of the redemption period must be made by certified, rather than registered, mail. *See* 1995 N.D. Laws ch. 118, § 2; *see also*

NDCC 1–02–36 ("registered mail" means "registered or certified mail"). The notices in this case were properly served by registered mail.

The county auditor shall serve notice of the expiration of the period of redemption by publication as to all property sold to the county for taxes for which notice is served upon the owner by registered mail. The notice may include any number of parcels of property and only one heading is necessary for the entire list. The notice must contain the description and any street address of each parcel of property. However, the failure to include the street address in the notice does not affect the validity of the notice. The notice must include a statement of the cost of publication of the notice. The notice must be published once on or before August first in the official newspaper of the county.

NDCC 57–28–06 (1991); *see also* NDCC 57–27–02(2). The published notice "must be substantially" in the form prescribed by NDCC 57–28–07, including this language:

The following is a list of the real estate sold at such tax sale on which the period of redemption will expire on October first. Opposite each description of such real estate appears any street address of the property, *the name of the owner of the record title thereof*, and the amount which must be paid to redeem from such tax sale before the period of redemption expires. Said sum includes the amount for which said land was sold, together with subsequent delinquent taxes for _____ and prior years, and interest, penalties, and cost of service. (List descriptions, *names of owners*, and amount necessary to redeem.)

(emphasis added). The published notice in this case contained the description and street address of each lot, and thus met the requirements of NDCC 57–28–06. Moreover, the published notice was "substantially" in the form contained in NDCC 57–28–07, except that only one of the six "apparent record title owners" was listed in the published notice.

Thus, unlike *Fibelstad*, 474 N.W.2d at 62, this case does not involve a total failure to publish a required notice. Rather, we must determine if the county's failure to list the other five owners in the otherwise properly published notice is an omission that renders the published notice jurisdictionally defective, even though it is undisputed that all six received proper service of the notice by registered mail. Under these circumstances, we hold that it is not.

■ The published notice "is for the protection and benefit of all persons who may have an interest in the property about to be sold." *Wittrock v. Weisz*, 73 N.W.2d 355, 357 (N.D.1955); *see also Knowlton v. Coye*, 76 N.D. 478, 487, 37 N.W.2d 343, 350 (1949). Indeed, this court specifically held in *Knowlton* that the "insertion in the published notice of the wrong name as that of the record title owner is fatal to the validity of the notice."

■ In both *Wittrock* and *Knowlton*, however, there was also improper notice by mail, and neither opinion considered the asserted defect in the published notice until after the service by mail was held to be jurisdictionally defective. Clearly, then, the failure to provide proper notice of the expiration of the redemption period by *both* mail and publication is a jurisdictional defect that voids a tax title. Furthermore, proper published notice cannot cure defective notice by registered mail. *See Strom*, 68 N.W.2d at 843–44 (rejecting argument that, "since the notice of expiration of the period of redemption was published as required by law no one was prejudiced by the failure of the county auditor to mail the redemption notice to the record title owner"); *Anderson v. Roberts*, 71 N.D. 345, 1 N.W.2d 338 (1941) (voiding tax deed even after finding proper publication notice). Here, however, we must decide if the omission of some of the names of the record title owners in the published notice can be a jurisdictional defect if all "apparent record title owners" received proper and complete notice by registered mail.

Peterson relies on *Anderson v. Shelton*, 92 N.W.2d 166 (N.D.1958). At the time of the tax sale in *Shelton*, the records of the register of deeds showed that Theodore and Cora Shelton each owned an undivided one-half interest in the property sold for nonpayment of taxes. *Id.* at 170–71. After examining the record, the *Shelton* court found:

We think the inference is clear that in the records in the county auditor's office dur-

ing the tax deed proceedings and at least until the land was sold by the county the name of the original owners appeared only as "Cora Shelton et. al." and that the notice of expiration of the period of redemption was given in accordance with that record.

*Id.* at 171. Because the notice of the expiration of the redemption period did not include the name of one of the record owners, Theodore Shelton, the *Shelton* court held that the county's tax deed was void. *Id.*

*Shelton,* however, like *Wittrock* and *Knowlton,* involved a complete failure by the county to provide proper notice of the expiration of the redemption period. In addition to failing to list a record owner in the published notice, the county also failed to *serve* Theodore Shelton with notice of the expiration of the redemption period by mail. Here, on the other hand, the trial court specifically found that the county properly served all six "apparent record title owners" with notice of the expiration of the redemption period by registered mail.

Thus, unlike in *Wittrock, Knowlton,* and *Shelton,* all "apparent record title owners" in this case received notice of the expiration of the redemption period. We do not believe that the county's failure to list the names of all six "apparent record title owners" in the published notice is a jurisdictional defect when it is undisputed that all of the record title owners received proper notice by registered mail.

Publication of the notice of the expiration of the redemption period potentially serves a very important purpose in tax sale proceedings. When serving the notice of the expiration of the redemption period by registered mail, the auditor must comply with all of the statutory and judicial requirements for serving that notice. *See Miles Homes v. City of Westhope,* 458 N.W.2d 321 (N.D.1990); *Griffeth v. Cass County,* 244 N.W.2d 301 (N.D. 1976). Sometimes, however, even the auditor's strict compliance with all of these requirements for serving notice by registered mail will result in a notice being returned to the county undelivered.

When proper service by registered mail does not result in the actual receipt of the notice of the expiration of the redemption period, the published notice is essential to give the person entitled to redeem one last opportunity to learn that the redemption period is about to expire. In such cases, therefore, the failure to list all of the record title owners in the published notice may be a jurisdictional defect. *See Griffeth* at Syllabus 2 ("Each of the named county officers must strictly comply with the statute relating to the notice of expiration of the period of redemption in order to make the tax title proceedings valid, *if actual service of the notice is not made on interested persons.*" (emphasis added)); *Payne v. A.M. Fruh Co.,* 98 N.W.2d 27, 30 (N.D.1959). This, though, is not such a case.

■■■ "Actual receipt of the notice" of the expiration of the redemption period "is the most effective and complete manner of notice possible." *Brown,* 80 N.W.2d at 99; *see also Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950) ("Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."). As this court clarified in *Baird v. Zahl,* 58 N.D. 388, 393–94, 226 N.W. 549, 551 (1929):

The notice of expiration of the time for redemption is intended to serve a purpose, namely, to afford to the parties entitled to make redemption notice that the holder of a tax certificate upon the premises is making application for a tax deed, and to give to such parties the information which the law requires that they be given. If the omission or irregularity is one of substance, it vitiates the notice; but, if the omission or irregularity is not one of substance, and the notice notwithstanding the error or irregularity substantially complies with the requirements of the statute so that all parties entitled to notice are actually afforded the notice the law requires, then the notice of expiration of time for redemption serves its intended purpose and is effectual.

Peterson does not dispute that all six "apparent record title owners" received notice of

the expiration of the redemption period by registered mail. Therefore, we conclude that "all parties entitled to notice [were] actually afforded the notice the law requires." *Id.*

Because all six "apparent record title owners" received notice by registered mail, the failure to list all six names in the otherwise properly published notice could not have prejudiced Peterson, nor could it have contributed in any manner to the loss of the lots. *See id.* 226 N.W. at 552 ("[I]f the error is one which could not possibly have misled or prejudiced a party entitled to redeem, then it does not destroy the effectiveness of the notice."); *Stutsman v. Smith,* 73 N.D. 664, 672, 18 N.W.2d 639, 641 (1945). Under these circumstances, we conclude that the omission of the names of the other five "apparent record title owners" in the otherwise proper published notice was not a jurisdictional defect that voids the subsequent tax deeds to the county.

We have considered Peterson's remaining arguments, and find them to be without merit. We affirm the trial court's judgment quieting title in Van Raden.

VANDE WALLE, C.J., and SANDSTROM, J., and LELVINE, Surrogate Justice, concur.

The Honorable Mary Muehlen Maring was not a member of the Court when this case was heard and did not participate in this decision.

NEUMANN, Justice, concurring and dissenting.

I concur in parts 1 and 3 of the majority's opinion. I dissent as to part 2 because I cannot agree the trial court's conclusion concerning the six "apparent record title owners" is an unchallenged finding of fact.

As the majority has stated, on appeal, a trial court's conclusions of law are fully reviewable and its findings of fact will be set aside only if they are clearly erroneous. In the present case, the trial court found two trustees of the Byron Ogren Trust were not served with notice of expiration of the period of redemption, but the court, without explanation, excluded those two trustees from its listing of the apparent record title owners. This court decides "[w]hether a determination is a finding of fact or a conclusion of law ... and labels applied by the trial court are not conclusive." *Maragos v. Norwest Bank Minnesota, N.A.,* 507 N.W.2d 562, 565 (N.D. 1993) (citing *Guardianship of Braaten,* 502 N.W.2d 512, 517 (N.D.1993)). "Findings of fact are the realities as disclosed by the evidence as distinguished from their legal effect or consequences. Where the ultimate conclusion can be arrived at only by applying rules of law the result is a 'conclusion of law.' " *E.E.E., Inc., v. Hanson,* 318 N.W.2d 101, 104 (N.D.1982). The determination of apparent record title owners clearly is a conclusion that can only be arrived at by applying rules of law. It is therefore a conclusion of law, or at the very least, a mixed question of fact and law, either of which is fully reviewable by this court on appeal. *Earth Builders, Inc. v. State,* 325 N.W.2d 258, 259 (N.D.1982).

The trial court's findings do not explain why the missing trustees are not apparent record title owners. The missing trustees' interest is reflected in the personal representatives' deed of distribution transferring the interest of the estate of Byron Ogren to the three trustees of the Byron Ogren Trust. In light of this evidentiary record, the unexplained omission of the two trustees from the list of apparent record title owners is error. This incorrect determination led the trial court to further conclude incorrectly that notice of expiration of the period of redemption was sufficient because all owners with a recorded interest were served.

I certainly agree with the majority when it says "neither the trial judge nor supreme court judges should have to examine the entire record title to assess the relevance of a particular entry." But, having said that, the majority then proceeds to examine the record title in its attempt to support the trial court's unsupported conclusion. The majority's characterization of the Ogren estate deed to the three trustees as an "isolated fragment" and of other conflicting record entries as "more important" and "effective" fails to expunge the missing trustees' interest from the record. Nor is an explanation accomplished by the majority's surprising assump-

tion that the missing trustees must have been named in the partition action (upon which the majority relies) simply because a code section requires it. The record fails to disclose the missing trustees were made parties to that action. Without such evidence in the record, the missing trustees' interest cannot be assumed away. Likewise, the majority's speculations regarding the details of the unrecorded trust instrument are not evidence in the record, and cannot make the interest of the missing trustees disappear.

I also agree when the majority says "we should not have to guess at whether the other two trustees retained record title after the partition action, judgment, and sheriff's deed." But guess is exactly what the majority has done in order to support and sustain the trial court's conclusion. The plaintiffs' tax deed was prima facie evidence of valid title only so long as there was no evidence of irregularity as to its issuance. Black's Law Dictionary 1190 (6th ed. 1990) (defining prima facie evidence as "evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence"). An irregularity sufficient to contradict a tax deed's prima facie evidence is a jurisdictional defect. *E.g., Remmich v. Wagner,* 77 N.D. 120, 41 N.W.2d 170, 173–74 (1950). Defendants asserted a jurisdictional defect by claiming notice of the expiration of the period of redemption was not given to all record title owners as required by law. To support their claim, they offered evidence, in the form of a legitimate deed to the three trustees, two of whom did not join in later transactions, and were not named in the partition action, and therefore continued to have an interest in the property entitling them to notice. Once that evidence was shown, it became the plaintiffs' responsibility, and not the defendants', to keep the majority from having to do the guessing it has done.

I would reverse the judgment for plaintiffs, and order entry of judgment dismissing plaintiffs' action to quiet title.